UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ESTATE OF ROSHAD MCINTOSH, ) <br> Deceased, by Cynthia Lane, Administrator, ) <br> ) <br> **Plaintiff,** ) <br> ) <br> vs. ) <br> ) <br> **CITY OF CHICAGO, Chicago Police Officers** ) <br> *SLECHTER, Star # 4924; SAMPIM,* ) <br> *Star #19641; ZODO, Star #1561; and BOWERY* ) <br> *Star # 11973,* ) <br> ) <br> **Defendants.** ) | No. 1:15-cv-01920 <br><br> Honorable Amy J. St. Eve <br><br> Jury Demand |

# **FIRST AMENDED COMPLAINT**

*A* Chicago police officer *brazenly shot and* killed an unarmed 19-year old Roshad McIntosh on August 24, 2014 *in full view of the other officers.*[1] Roshad's death devastated his community and his family. This is a civil rights and wrongful death action on behalf of the Estate of Roshad McIntosh.

The Defendant officers *are responsible for* kill*ing* Roshad without justification. Further, the unconstitutional policies and practices of the Chicago Police Department have resulted in the unjustified shooting deaths of too many young Black men, including Roshad, and the City is therefore also liable for his death.

---

[1] All changes to the original complaint are designated by italics.

1

## JURISDICTION AND VENUE

1. The Jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983 *et seq*; the Judicial Code, §§ 1331 and 1343(a); and the Constitution of the United States.

2. Venue is proper in this District under 28 U.S.C. § 1391(b). The parties reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to Plaintiff's claims also occurred in this judicial district.

## PARTIES

3. Cynthia Lane was appointed Administrator of the Estate of Roshad McIntosh, deceased, by the Probate Division of the Circuit Court of Cook County, Illinois.

4. Cynthia Lane is a resident of Cook County, Illinois, and is Roshad McIntosh's mother.

5. Roshad's sole surviving heir is his three year old son pursuant to the probate laws of the State of Illinois.

6. Defendants *Slechter, Sampim, Zodo, and Bowery* were, at the time of this occurrence, duly appointed police officers employed by the City of Chicago and engaged in the conduct complained of in the course and scope of their employment with the City of Chicago.

7. At the times material to this complaint, Defendants *Slechter, Sampin, Zodo and Bowery* were acting under color of state law, ordinance, and/or regulation. They are sued in their individual capacities.

8. Defendant City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois, is the employer and principal of Defendants *Slechter, Sampin,*

*Zodo and Bowery*, and is responsible for the policies, practices and customs of its Police Department, City Council, Independent Police Review Authority, and Police Board.

## FACTS

9. On Sunday, August 24, 2014, Roshad McIntosh was enjoying a summer evening with others on the 2800 block of West Polk Street, Chicago, Illinois when a group of Chicago police officers, including Defendants, arrived on the scene.

10. Chicago police officers jumped out of their vehicles and drew their guns, pointing their weapons at Roshad and others.

11. *The officers* chased Roshad into the back yard of a nearby residence.

12. Roshad, who was unarmed, surrendered, but Defendant *Slechter* fired several gunshots into the body of Roshad McIntosh, killing him without cause or provocation.

13. Defendants *Sampim, Zodo, and Bowery* had the duty and opportunity to intervene to protect Roshad and did nothing to assist him or prevent the shooting.

14. Defendants*, together with their unsued co-conspirators,* jointly agreed and/or conspired with one another to complete false and incomplete official reports and to give a false and incomplete version of the events to certain superiors and the public; falsely claiming that Roshad placed them in imminent fear of bodily harm in order to cover up their misconduct.

15. All of the actions of the Defendants and their named and unnamed co-conspirators, as set forth above and below were done jointly, in concert, and with shared intent and thereby constitute a continuing civil conspiracy under 42 U.S.C. § 1983.

16. As a direct and proximate result of the Defendants' misconduct, Roshad's minor son, his heir, his family and his community suffered, *inter alia*, *severe grief,* injury, pain and

3

suffering, mental distress, loss of love, affection, society, companionship, consortium and expenses, as well as other injuries as a result of Roshad's death.

## COUNT I

## [42 U.S.C. § 1983 Claim for Unconstitutional Seizure]

17. Plaintiff repeats and realleges paragraphs 1-16 as if fully set forth herein.

18. The actions of Defendant *Slechter* in stopping Roshad McIntosh and shooting him with a firearm without just cause, and the actions of *Defendants Sampim, Zodo and Bowery* in failing to intervene to prevent said abuse, despite having the opportunity to do so, violated his rights under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable seizure, and his right to due process under the Fourteenth Amendment to the United States Constitution, and caused the injuries set forth above.

19. The aforementioned actions of the Defendants were the direct and proximate cause of the constitutional violations set forth above and of the Plaintiff's injuries.

WHEREFORE, pursuant to 42 U.S.C. §1983, Plaintiff demands substantial actual or compensatory damages, and because Defendants *Slechter, Sampin, Zodo and Bowery* acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action, attorney's fees and whatever additional relief this Court deems equitable and just.

## COUNT II
## [42 U.S.C. § 1983 *Monell* Policy Claim Against Defendant City of Chicago]

20. Plaintiff repeats and realleges paragraphs 1-16.

21. Despite the facts and circumstances surrounding the shooting of Roshad McIntosh that clearly demonstrate that the shooting and killing was unreasonable and unlawful; upon

4

information and belief, the City of Chicago has failed to effectively investigate the shooting or impose any discipline on the Defendant police officers.

22. The actions of Defendants *Slechter, Sampin, Zodo and Bowery* as alleged above were done pursuant to one or more interrelated *de facto* policies, practices and/or customs of the City of Chicago, its police department, Police Board, I.P.R.A., I.A.D., Personnel Division, and/or Superintendents.

23. At all times material to this complaint the Defendant City and its police department, Superintendents, I.P.R.A., I.A.D., Personnel Division and/or Police Board had interrelated *de facto* policies, practices, and customs which included, *inter alia*:

a) the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control police officers who commit acts of excessive force, including unjustified shootings;

b) the police code of silence;

c) the encouragement of excessive and unreasonable force;

d) the failure to properly investigate shootings of civilians, particularly young Black men, by Chicago police officers;

e) the failure to properly discipline, monitor, counsel and otherwise control Chicago police officers who engage in unjustified shootings; and/or

f) the failure to properly train and supervise Chicago police officers with regard to discharging their weapons at civilians, particularly at young Black men.

24. Over the last decade, Black Chicagoans were ten times more likely to be shot by Chicago police officers than white Chicagoans.

25. In the first six months of 2014, 23 of the 27 people who were shot by a Chicago police officer were Black.

26. From late 2007 to July 2014, IPRA investigated approximately 312 shootings by Chicago police officers. Of the 158 investigations of "officer involved shootings" that were completed, only one officer was found to have violated any department rule, and in that single case IPRA found that "extraordinary circumstances" mitigated his actions.

27. At least 21 Chicago police officers are currently still employed by the department, some with honors, despite having shot citizens under highly questionable circumstances, resulting in payments by the City totaling at least $30.2 million to settle lawsuits.

28. At least 500 Chicago police officers with more than 10 misconduct complaints over the five year period from 2001 to 2006 are still employed by the department and six officers who have shot and killed civilians also have a large volume of complaints of misconduct, for which they have not received any penalty, discipline, supervision or re-training.

29. The policy, practice, and custom of a police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, including the unjustified discharge of an officer's weapon, despite their obligation under police regulations to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability or criminal charges, in cases where they and their fellow officers have used excessive force and/or engaged in unjustified shootings of civilians.

30. In *Obrycka v. City of Chicago,* 2012 WL 11047181 (N.D. Ill.), the longstanding and widespread CPD code of silence was again exposed when video tape and cellular phone evidence revealed Chicago police officers trying to cover up and conceal a fellow officer's

vicious beating of a female bartender within the City of Chicago. The *Obrycka* jury found that the City had either (1) a widespread custom or practice of failing to investigate and/or discipline its officers; (2) a widespread custom or practice of a police code of silence; or (3) both; and a judgment was entered against the City.

31. The fact that the aforementioned code of silence exists, and that its adverse impact is allowed to occur through the actions and inactions of high ranking police officials including police Superintendents and O.P.S. and I.P.R.A. Directors, is also evidenced by the fact that while former Superintendent Martin, former O.P.S. Director Fogel, former Mayor Richard M. Daley and former O.P.S. Director Shines have all acknowledged publicly that they are aware of the existence of the custom and practice of a police code of silence, they or their successors have not acted to eliminate the code or to counteract its impact on police discipline, the use of excessive force, the fabrication of evidence and false arrests and prosecutions.

32. In a December 2014 report posted on the City's web site, entitled "Preventing and Disciplining Police Misconduct - An Independent Review and Recommendations Concerning Chicago's Police Disciplinary System," the City acknowledges that in recent years there continue to be both external and internal concerns raised about how complaints of misconduct by police officers were investigated and disciplined.

33. The *de facto* policies, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, counsel and/or control police misconduct and the code of silence are interrelated and exacerbate the effects of each other, to, in the words of former O.P.S. Director Fogel, "institutionalize police lying" and "immunize police officers from discipline."

34. Recently, two Chicago Police officers filed a lawsuit for violation of their First Amendment rights and the Illinois Whistleblower Protection Act Statute, alleging an ongoing

code of silence so pervasive that they were harassed, threatened, ostracized, and retaliated against by other officers, including supervisors, after they reported illegal conduct of a group of officers. *Spalding v. City of Chicago*, No. 12-cv-08777 (N.D. Ill.).

35. Additionally, that the unconstitutional actions of the Defendants were part of a widespread municipal policy, practice and custom is further established by the involvement in, and ratification of, these acts by municipal supervisors and policy makers, as well as by a wide range of other police officials, officers, and divisions of the Department, including its Internal Affairs Division, I.P.R.A., the Detective Division, and the Public Affairs Section. This involvement and ratification is further demonstrated, *inter alia*, by the public statements of these policy making officials, and the Department's failure to properly investigate the unconstitutional conduct of the Defendants, or to discipline them for their unconstitutional conduct.

36. The aforementioned policies, practices and/or customs of failing to hire, supervise, train, discipline, monitor, transfer, counsel, and/or control police misconduct and the police code of silence, separately and together, proximately caused injury to Roshad McIntosh and his Estate in this case, *inter alia*, because Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, that these denials would go unchallenged by these supervisors and fellow officers, from the police Superintendents, Police Board, and Directors of I.P.R.A. on down, and that they were immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

37. But for the belief that they would be protected, both by fellow officers and by the department, from serious consequences, Defendants *Slechter, Sampin, Zodo and Bowery and*

8

*their un-sued co-conspirators* would not have engaged in the conduct that resulted in the shooting and death of Roshad McIntosh, *and the subsequent cover-up thereof*.

38. Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendant officers to commit the aforesaid acts against Roshad McIntosh and therefore acted as the moving force and were, separately and together, direct and proximate causes of the injuries to Roshad McIntosh and his Estate.

39. Additionally, said failure to properly hire, train, supervise, discipline, monitor, control, counsel and/or transfer the Defendant officers was also done with deliberate indifference and likewise acted as a direct and proximate cause of the injuries to Roshad McIntosh and his Estate.

40. These policies, practices and customs encouraged, *inter alia*, the unreasonable shooting of Black men, police misconduct, the fabrication of evidence, the intimidation of witnesses, and the making of false statements and reports, and the code of silence and were, separately and together, the moving force and a direct and proximate cause of the unconstitutional acts committed by the Defendants in this case and the injuries sustained by Roshad McIntosh and his Estate.

WHEREFORE, pursuant to 42 U.S.C. §1983, Plaintiff demands substantial actual or compensatory damages, *against the Defendant City*, plus the costs of this action, attorney's fees and whatever additional relief this Court deems equitable and just.

## COUNT III
## [State Law Claim for Wrongful Death]

41. Plaintiff repeats and realleges paragraphs 1-16, 21-40.

9

42. Roshad McIntosh is survived by his minor son, whom constitutes his sole heir under Illinois law.

43. Roshad McIntosh was pronounced dead on August 24, 2014.

44. The wrongful death of Roshad McIntosh was proximately caused by the willful and wanton conduct of Defendants *Slechter, Sampin, Zodo and Bowery* in violation of 740 ILCS § 180.1.

45. Defendant police officers' wrongful conduct was the direct and proximate cause of injury and damage to Roshad McIntosh and his Estate.

46. As next of kin, Roshad's minor son has lost and will continue to lose, pecuniary support, consortium, society, companionship as well as all family members have suffered the grief and sorrow from the loss of the love and affection of and for his father Roshad McIntosh, and the Estate has incurred funeral and burial experiences as a proximate result of his wrongful death.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages, and because Defendants *Slechter, Sampin, Zodo and Bowery* acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

## COUNT IV
## [State Law Survival Claim]

47. Plaintiff repeats and realleges paragraphs 1-16, 21-40, 42-46.

48. As a direct and proximate result of the wrongful actions of Defendants *Slechter, Sampin, Zodo and Bowery* as set forth above, Roshad McIntosh suffered serious injuries of a personal and pecuniary nature, including but not limited to, pain and suffering experienced as he

was dying from the gunshot wounds inflicted by Defendants subjecting Defendants to liability pursuant to 755 ILCS 5/27-6, commonly referred to as the Survival Statute.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages, and because Defendants *Slechter, Sampin, Zodo and Bowery* acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

# COUNT V
# [State Law Claim for Funeral Expenses]

49. Plaintiff repeats and realleges paragraphs 1-16, 21-40, 42-46, 48.

50. As a direct and proximate result of the actions of Defendants *Slechter, Sampin, Zodo and Bowery* as set forth above, acting within the scope of their employment by the City of Chicago, Plaintiff and the Estate of Roshad McIntosh did sustain losses in the form of funeral and burial expenses.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages, and because Defendants *Slechter, Sampin, Zodo and Bowery* acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

# COUNT VI
# [State Law Claim for Intentional Infliction of Emotional Distress]

51. Plaintiff repeats and realleges the paragraphs 1-16, 21-40, 42-46, 48, 50.

52. Defendants *Slechter, Sampin, Zodo and Bowery* engaged in extreme and outrageous behavior as detailed above.

53. Defendants *Slechter, Sampin, Zodo and Bowery* intended such conduct to inflict severe emotional distress upon Roshad McIntosh and his heir and knew that their conduct would cause Roshad McIntosh and his family severe emotional distress.

54. As a direct and proximate result of Defendant police officers' outrageous conduct, Roshad McIntosh and his Estate were injured and suffered actual damages.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages, and because the Defendants *Slechter, Sampin, Zodo and Bowery* acted maliciously, wantonly, or oppressively, plus the costs of this action and whatever additional relief this Court deems equitable and just.

## COUNT VII
## [State Law Claim for Conspiracy]

55. Plaintiff repeats and realleges paragraphs 1-16, 23-35, 42-43, 46, 48, 50.

56. Defendants *Slechter, Sampin, Zodo and Bowery*, together with their unsued co-conspirators, reached an understanding, engaged and continue to engage in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to unreasonably stop, seize, shoot and kill Roshad McIntosh in violation of his constitutional rights and to complete false and misleading reports and make false statements to superior officers in order to conceal their wrongdoing.

57. In furtherance of this conspiracy or conspiracies, the Defendants *Slechter, Sampin, Zodo and Bowery*, together with their unsued co-conspirators, committed the overt acts set forth above.

58. The conspiracy or conspiracies were and are continuing in nature.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages, and because Defendants *Slechter, Sampin, Zodo and Bowery* acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

## COUNT VIII
## [State Law Claim for Battery]

59. Plaintiff repeats and realleges paragraphs 1-16, 23-35, 42-43, 46, 48, 50.

60. The Defendants *Slechter, Sampin, Zodo and Bowery* knowingly and without legal justification caused bodily harm to Plaintiff when they shot and killed him, and/or made physical contact with him, thereby constituting battery under Illinois law.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages, and because Defendants *Slechter, Sampin, Zodo and Bowery* acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

## COUNT IX
## [State Law Claim for *Respondeat Superior* Against Defendant City of Chicago]

61. Plaintiff repeats and realleges paragraphs 1-62.

62. Defendants *Slechter, Sampin, Zodo and Bowery* were, at all times material to this complaint, employees and agents of the Defendant City of Chicago acting within the scope of their employment. Defendant City of Chicago is liable for the acts of Defendants *Slechter, Sampin, Zodo and Bowery* which violated state law under the doctrine of *respondeat superior*.

WHEREFORE, Plaintiff demands judgment for compensatory damages, jointly and severally from the City of Chicago plus the costs of this action and whatever additional relief this Court deems equitable and just.

## COUNT X
## [745 ILCS 10/9-102 Claim Against Defendant City of Chicago]

63. Plaintiff repeats and realleges paragraphs. 1-62.

64. Defendant City of Chicago was the employer of Defendants *Slechter, Sampin, Zodo and Bowery* at all times relevant to this complaint.

65. Defendant police officers committed the acts alleged above under the color of law and in the scope of their employment as employees of the City of Chicago, and the City is liable for their actions pursuant to 745 ILCS 10/9-102.

WHEREFORE, Plaintiff demands judgment against the Defendant City of Chicago in the amount awarded to Plaintiff against any and all individual Defendants as damages, attorney's fees, costs and interest, and/or for any settlement entered into between the Plaintiff and Defendants, and for whatever additional relief this Court deems equitable and just.

Dated: May 12, 2015          Respectfully submitted,

<u>/s/ Sarah Gelsomino</u>
Sarah Gelsomino
Shubra Ohri
Janine L. Hoft
People's Law Office
1180 N. Milwaukee Avenue
Chicago, IL 60642
(773) 235-0070
Attorneys for Plaintiff

PLAINTIFF DEMANDS TRIAL BY JURY