**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ESTATE OF ROSHAD MCINTOSH, | ) | |
| Deceased, by Cynthia Lane, Administrator, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15 C 1920 |
| | ) | |
| CITY OF CHICAGO, Chicago Police Officers | ) | |
| SLECHTER, Star #4924; SAMPIM, | ) | |
| Star #19641; ZODO, Star #1561; | ) | |
| and BOWERY, Star #11973, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff Estate of Roshad McIntosh, appointed Administrator Cynthia Lane, filed her First Amended Complaint on May 12, 2015, naming as Defendants, the City of Chicago ("City") and Chicago Police Officers Slechter, Star #4924 ("Slechter"), Sampim, Star #19641 ("Sampim"), Zodo, Star #1561 ("Zodo"), and Bowery, Star #11973 ("Bowery") (collectively "Defendant Officers", together with Defendant City "Defendants") and alleging claims for an unconstitutional seizure under 42 U.S.C. § 1983 (Count I) against Defendant Officers; a *Monell* claim against Defendant City (Count II); state law claims for wrongful death (Count III), survival (Count IV), funeral expenses (Count V), intentional infliction of emotional distress (Count VI), conspiracy (Count VII), and battery (Count VIII) against Defendant Officers; and *respondeat superior* (Count IX) and indemnification (Count X) against Defendant City. (*See generally,* R.12, Pl.'s Amd. Compl.) Plaintiff further requests punitive damages under Counts I, III, IV, V, VII, and VIII. (*Id.*) Before the Court is Defendant Officers' partial motion to dismiss Plaintiff's

First Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief

can be granted, seeking dismissal of Counts III, IV, V, and VIII against Defendants Sampim,

Zodo, and Bowery and dismissal of Plaintiff's request for punitive damages under Counts III, IV,

and V.  (R.20.)  Also before the Court is Defendant City's Motion to Bifurcate Section 1983

Claims and to Stay Discovery and Trial on Those Claims pursuant to Federal Rule of Civil

Procedure 42(b).  (R.28.)  For the reasons set forth below, the Court grants in part and denies in

part Defendant Officers' partial motion to dismiss and denies Defendant City's motion to

bifurcate without prejudice to a renewed motion for bifurcation of trial after discovery is

completed.

## BACKGROUND

### I.    Factual Allegations

Viewing the allegations in the light most favorable to Plaintiff, Plaintiff alleges the

following: On August 24, 2014, Roshad McIntosh ("McIntosh") was on the 2800 block of West

Polk Street in Chicago when a group of Chicago police officers, including Defendant Officers,

arrived on the scene.  (R.12, ¶ 9.)  The officers jumped out of their vehicles and drew their guns,

pointing them at McIntosh and others.  (*Id.*, ¶ 10.)  The officers chased McIntosh into the

backyard of a nearby residence.  (*Id.*, ¶ 11.)  Although McIntosh was unarmed and surrendered,

Defendant Slechter fired several gunshots at him, killing him without cause or provocation.  (*Id.*,

¶ 12.)  Defendants Sampim, Zodo, and Bowery did nothing to assist McIntosh or prevent the

shooting.  (*Id.*, ¶ 13.)  Plaintiff further alleges that, in order to cover up their misconduct,

Defendant Officers completed false and incomplete official reports and gave a false and

incomplete version of the events to certain superiors and the public, and falsely claimed that

McIntosh placed them in imminent fear of bodily harm.  (*Id.*, ¶ 14.)  McIntosh's minor son, his

heir, his family, and his community, have suffered grief, injury, pain and suffering, mental distress, loss of love, affection, society, companionship, consortium, and expenses, as well as other injuries as a result of McIntosh's death.  (*Id.*, ¶ 15.)

## II.  *Monell* **Allegations**

In Count II of her First Amended Complaint, Plaintiff alleges that Defendant City and its police department, Superintendents, Independent Review Police Authority ("I.P.R.A."), Internal Affairs Division ("I.A.D."), Personnel Division and/or Police Board had interrelated *de facto* policies, practices, and customs which include: (1) failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control police officers who commit acts of excessive force; (2) police code of silence; (3) encouragement of excessive and unreasonable force; (4) failure to properly investigate shootings of civilians; (5) failure to properly discipline, monitor, counsel and otherwise control Chicago police officers who engage in unjustified shootings; and/or (6) failure to properly train and supervise Chicago police officers with regard to discharging weapons at civilians.  (*See* R.12, ¶ 23.)  Plaintiff further alleges that these policies, practices, and customs "both individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendant [O]fficers to commit the aforesaid acts against Roshad McIntosh and therefore acted as the moving force and were, separate and together, direct and proximate causes of the injuries to Roshad McIntosh and his Estate."  (*Id.*, ¶¶ 38, 39.)  These policies, practices, and customs, as Plaintiff alleges, also encouraged "the unreasonable shooting of Black men, police misconduct, the fabrication of evidence, the intimidation of witnesses, and the making of false statements and reports, and the code of silence and were, separately and together, the moving force and a direct and proximate cause of the

unconstitutional acts committed by the Defendants in this case and the injuries sustained by Roshad McIntosh and his Estate." (*Id.*, ¶ 40.)

## LEGAL STANDARD

### I.    Defendant Officers' Partial Motion to Dismiss - Rule 12(b)(6)

Defendant Officers move to dismiss Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). *See* R.10. "A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). A district court's analysis under Rule 12(b)(6) "rests on the complaint, and [the court] construe[s] it in the light most favorable to the plaintiffs, accepting as true all well-pleaded facts alleged and drawing all permissible inferences in their favor." *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014); *see also Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 823 (7th Cir. 2014); *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). "[T]he complaint must supply 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (quoting *Twombly*, 550 U.S. at 556). "A claim must be plausible rather than merely conceivable or speculative, meaning that the plaintiff must include 'enough details about the subject-matter of the case to present a story that holds together.'" *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826-27 (7th Cir. 2014) (citations omitted). A plaintiff's pleading

burden "should be commensurate with the amount of information available" to him. *Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1100 (7th Cir. 2015).

## II.     Defendant City's Motion to Bifurcate and Stay Trial and Discovery - Rule 42(b)

Federal Rule of Civil Procedure 42(b) authorizes a district court to order separate trials of any claim or issue "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy … always preserving inviolate the right of trial by jury." Fed. R. Civ. P. 42(b); see also *Chlopek v. Fed. Ins. Co.,* 499 F.3d 692, 700 (7th Cir. 2007). When determining whether to bifurcate discovery or trial, the Court "must balance considerations of convenience, economy, expedition, and prejudice, depending on the peculiar facts and circumstances of each case." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008). Whether to bifurcate trial is a decision made on a case-by-case basis and committed to the sound discretion of the district court. *See Volkman v. Ryker*, 736 F.3d 1084, 1088-89 (7th Cir. 2013); *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). While separation of issues should not be customary, "it is important that it be encouraged where the experience has demonstrated its worth." *Ojeda-Beltran v. Lucio*, No. 07 C 6667, 2008 WL 2782815, at *1 (N.D. Ill. July 16, 2008) (citations omitted).

## ANALYSIS

## I.     Defendant Officers' Partial Motion to Dismiss

### A.     Plaintiff's Wrongful Death, Survival, and Funeral Expense Claims Are Sufficiently Pled

The Illinois Wrongful Death Act provides a cause of action, "[w]henever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof." 740 ILCS 180/1; *Williams v. Manchester,* 228 Ill.2d 404,

320 Ill. Dec. 784, 888 N.E.2d 1, 10 (2008) ("An injury resulting from the wrongful act, neglect, or default of another gives the victim, if she survives the injury, a right of action; if the victim dies, the [Wrongful Death] Act transfers the right of action to the victim's personal representative").

Defendant Officers do not argue that Plaintiff's allegations fail to establish a wrongful death claim. Instead, they argue that the Illinois Local Government and Governmental Employees Tort Immunity Act ("Immunity Act") shields them from liability because Plaintiff seeks to hold Officers Sampim, Zodo, and Bowery liable for failing to intervene and prevent the shooting of McIntosh and his alleged wrongful death.[1] *See* 745 ILCS 10/1-101, *et seq*. The Court agrees with Plaintiff and finds that the Immunity Act does not shield Defendants at this stage based on the facts alleged regarding Defendant Officers' "willful and wanton conduct".

### 1. The Immunity Act

The Immunity Act shields "local public entities and public employees from liability for ordinary negligence committed during the exercise of their duties." *Marshbanks v. City of Calumet City*, No. 13 C 2978, 2015 WL 273221, at *8 (N.D. Ill. Jan. 20, 2015) (*citing Mitchell v. Special Educ. Joint Agreement Sch. Dist. No. 208*, 386 Ill.App.3d 106, 111, 325 Ill.Dec. 104, 897 N.E.2d 352 (Ill.App.Ct. 2008)). In particular, Defendant Officers assert immunity under two separate sections of the Immunity Act—Sections 4-102 and 2-204. First, Defendant Officers assert that Section 4-102 "immunizes local public entitles and public employees for failure to: (1)

---

[1] Defendants assert that "Plaintiff alleges that Officer Slechter fired the shots that killed McIntosh and seeks to hold Officers Sampim, Zodo, and Bowery liable for having 'the duty and opportunity to intervene to protect Roshad and do [sic] nothing to assist him or prevent the shooting.'" (R.20, at 4.) As alleged in Plaintiff's First Amended Complaint, however, Plaintiff's failure to intervene argument is tied to her § 1983 claim for unconstitutional seizure, not her wrongful death and survival claims. Instead, Plaintiff's wrongful death and survival claims reference Defendants "willful and wanton" and "wrongful" conduct. (*See* R.12, ¶¶ 44, 45, 48.)

establish a police department; (2) otherwise provide police protection; or, if police protection is provided, (3) failure to provide adequate police protection service." *Payne v. City of Chicago*, 2014 IL App (1st) 123010, ¶ 27, 16 N.E.3d 110, 384 Ill.Dec. 14 (2014); *see also* 745 ILCS 10/4-102. Second, Defendant Officers assert immunity under Section 2-204 which states, "[e]xcept as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person." 745 ILCS 10/2-204. The "statutory immunities provided by the [Immunity Act] extend to allegations of willful and wanton conduct unless the legislature has specially indicated otherwise." *Hess v. Flores*, 408 Ill.App.3d 631, 644, 948 N.E.2d 1078, 350 Ill.Dec. 571 (Ill. App. Ct. 2011). Neither Section 4-102 nor Section 2-204 contains an explicit exception for "willful and wanton conduct". Therefore, to the extent these sections apply, immunity would apply.

Plaintiff argues, however, that under Section 2-202 of the Immunity Act Defendant Officers' acts or omissions amount to "willful and wanton conduct" and expose them to liability for state law claims. (R.29, at 4; R.30, at 2; *see also* R.12, ¶¶ 41-46 (Count III), ¶¶ 47-48 (Count IV), ¶¶ 49-50 (Count VI).) Section 2-202 provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. Unlike Sections 4-102 and 2-204 relied on by Defendant Officers, Section 2-202 of the Immunity Act contains an explicit exception for "willful and wanton conduct" and therefore does not provide blanket immunity. *See Payne*, 2014 IL App (1st) 123010, ¶ 30. The exception to immunity in Section 2-202, however, "will not prevail where other, more specific, immunities apply." *Hess*, 408 Ill.App.3d at 644.

Under Illinois law, courts must analyze which section of the Immunity Act is specifically applicable to the facts in each case in order to ultimately determine whether immunity applies. *See e.g., Ries v. City of Chicago*, 242 Ill.2d 205, 220, 351 Ill.Dec. 135, 950 N.E.2d 631 (2011) (finding that both Section 2-202 and Section 4-106(b) of the Immunity Act "potentially apply to the facts of this case", but finding "section 4-106(b), the more specifically applicable immunity, controls"); *Payne*, 2014 IL App (1st) 123010, ¶ 29 (finding section 2-202 inapplicable because "the facts of this case do not establish the requisite execution or enforcement of a law but, rather, fall squarely within the 'failure to provide adequate police protection service' under section 4-102"). As an initial matter, therefore, in order to determine whether immunity shields Defendants Sampim, Zodo, and Bowery from liability, the Court must determine which section of the Immunity Act specifically applies to the facts of this case. If either Section 2-204 or Section 4-102 specifically applies, then the Immunity Act shields Defendants Sampim, Zodo, and Bowery, whereas if Section 2-202 specifically applies, no protection is afforded.

## 2. The Applicable Immunity Act Provision

Viewing the facts and all reasonable inferences in the light most favorable to Plaintiff, as the Court must do at this stage, Section 2-202 applies. "Generally, the question of whether a police officer is executing and enforcing the law under Section 2-202, rather than providing police protection or service under Section 4-102, is a factual determination which must be made in light of the circumstances involved." *Id.*, ¶ 32. "Police efforts to aid, assist, or rescue individuals are within the scope of 'police protection or service' and are covered under section 4-102 of the [Immunity Act]." *Id.*, ¶ 33. "Because these functions are commonly recognized as an important part of police services," the Illinois courts "believe that the legislature intended to grant immunity for this type of service as well as for police protection." *Id*. On the other hand, Section 2-202 "provides immunity only where the public employee is negligent while *actually*

engaged in the execution or enforcement of a law." *Id.*, ¶ 34 (*citing Barnett v. Zion Park Dist.*, 171 Ill.2d 378, 391, 216 Ill.Dec. 550, 665 N.E. 2d 808 (1996)). Put differently, "Section 4-102 immunity may apply in the context where police officers are simply providing or failing to provide police services, but section 2-202 immunity requires more particular circumstances for its application, *i.e.*, an act or a course of conduct 'in execution or enforcement' of law." *Payne*, 2014 IL App (1st) 123010, ¶ 34 (*citing Aikens v. Morris*, 145 Ill.2d 273, 282, 164 Ill.Dec. 571, 583 N.E.2d 487 (1991)).

At this early stage of the litigation, Plaintiff's First Amended Complaint pleads more than enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the applicability of Section 2-202. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Plaintiff alleges that Officers Sampim, Zodo, and Bowery arrived at West Polk Street in Chicago, jumped out of their vehicles and drew their guns, pointing them at McIntosh and others. (*See* R.12, ¶ 9-10.) Defendant Officers then chased McIntosh—who was unarmed—into the backyard of a nearby residence. (*Id.*, ¶¶ 11, 12.) Although McIntosh surrendered, Defendant Slechter fired several gunshots that killed McIntosh. (*Id.*, ¶ 12.) Plaintiff has not, for example, alleged any facts that Defendant Officers were responding to a call for police assistance—which would directly implicate Section 4-102. *See Payne*, 2014 IL App (1st) 123010, ¶ 33. Nor are there allegations that would directly implicate Section 2-202, e.g., that Defendant Officers were responding to a call that a crime may have just been committed, or whether they were investigating a crime or traffic accident, making an arrest or issuing a citation, or quelling a public breach of peace. *See id.*, ¶ 35. Taking the facts as alleged and drawing all reasonable inferences in the light most favorable to Plaintiff, however, it is reasonable to infer that Defendant Officers' alleged behavior was associated with an investigation of a crime, to make an

9

arrest, or in response to a call to apprehend McIntosh—or at least apprehend someone at the West Polk Street location where McIntosh was shot. The discovery process will reveal the character, nature and extent of the reasons for Defendant Officers' presence at the scene and their actions and/or omissions during their encounter with McIntosh that led to his death.[2]

Assuming, therefore, for the sake of this motion to dismiss that Section 2-202 is the specifically applicable Immunity Act provision, Plaintiff's allegations rely on the "willful and wanton conduct" exception to immunity. In particular, Plaintiff alleges Defendant Officers engaged in "willful and wanton" conduct in support of Counts III (wrongful death), IV (survival), and V (funeral expenses). (*See* R.12, ¶¶ 9-13, 44, 45, 47-51.) "Willful and wanton conduct" is defined as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210; *see also Wilson v. City of Chicago*, 758 F.3d 875, 881 (7th Cir. 2014); *Chelios v. Heavener*, 520 F.3d 678, 693 (7th Cir. 2008) (citations omitted) (explaining that under Illinois law, "a police officer is not guilty of willful or wanton conduct unless he acted with 'actual or deliberate intention to harm or with an utter indifference to or conscious disregard for the safety of others'"). "Although willful and wanton conduct 'consists of more than mere inadvertence, incompetence, or unskillfulness,' it need not be an 'intentional act; rather, it may be an act committed under circumstances exhibiting a reckless disregard for the safety of others.'" *Id.* (*citing Carter v. Chicago Police Officers,* 165 F.3d 1071, 1071 (7th Cir. 1998)).

---

[2] Similarly, the Court finds that Section 2-202 of the Immunity Act applies more specifically than Section 2-204 because McIntosh's death, based on the facts alleged, was directly caused by Defendant Schlecter's shooting (*see* R.12, ¶ 12) and was proximately caused by Defendants Sampim, Zodo, and/or Bowery's acts or omissions at the scene (*see id.*, ¶¶ 9-13, 44, 45). *See* 745 ILCS 2-202; 745 ILCS 2-204.

In her First Amended Complaint, Plaintiff alleges that McIntosh's wrongful death "was proximately caused by the willful and wanton conduct of Defendants Slechter, Sampim, Zodo and Bowery in violation of 740 ILCS § 180.1".[3]  (*See* R.12, ¶ 44.)  As discussed above, Plaintiff alleges that Defendant Officers arrived at the scene, jumped out of their vehicles and drew their guns, pointing at McIntosh and others, and chased McIntosh—unarmed—into the backyard where he surrendered and they shot him.  (*See* R.12, ¶¶ 9-12.)  These allegations support a reasonable inference that Defendant Officers' conduct was willful and wanton in that they had knowledge of, or turned a blind eye towards the fact that McIntosh was chased, unarmed, and then shot after McIntosh surrendered.  Indeed, "whether the conduct is sufficiently willful and wanton is ordinarily a question of fact for the jury and rarely should be ruled upon as a matter of law."  *See Liska v. Dart*, 60 F.Supp.3d 889, 906 (N.D. Ill. 2014) (citations omitted); *see also Drain v. Bauman*, 708 F.Supp.2d 693, 709 (N.D. Ill. 2010) (*citing Chelios*, 520 F.3d at 693; *Carter v. Simpson*, 328 F.3d 948, 951 (7th Cir. 2003)) ("Whether an officer acted wantonly 'is normally a question of fact to be determined by the jury").  The principle is applicable here and the cases upon which Defendant Officers rely do not change the factual nature of this inquiry because they address state law claims of wrongful death and survival, not in a motion to dismiss, but during summary judgment.  (*See* R.20, at 5 (*citing Thompson v. City of Chicago,* No. 01 C 8883, 2004 WL 1197436, at *7-8 (N.D. Ill. May 28, 2004) and *Lewis v. City of Chicago*, No. 04 C 3904, 2005 WL 947195, at *8 (N.D. Ill. Apr. 11, 2005)).)

In addition, Defendant Officers' immunity argument is premature, in this case, as a basis for dismissing Plaintiff's claims.  "[C]omplaints need not anticipate affirmative defenses", and

---

[3] Similarly, Plaintiff's survival claim and funeral expenses claim are also predicated on the "direct and proximate result of the wrongful actions of Defendants Slechter, Sampim, Zodo and Bowery." (*Id.*, ¶¶ 48, 50.)

"neither *Iqbal* or *Twombly* suggests otherwise." *Levin v. Miller,* 763 F.3d 667, 671 (7th Cir. 2014); *see also Brooks*, 578 F.3d at 579. Illinois tort immunity is an affirmative defense. *See Wilson*, 758 F.3d at 879 (referring to the "affirmative defense of immunity under § 2-202" of the Illinois Tort Immunity Act); *see also Davis v. City of Chicago*, 2014 Ill App (1st) 122427, ¶ 7, 380 Ill. Dec. 189, 193, 8 N.E.3d 120, 124 (addressing the "affirmative defense … of immunity under section 2-202" of the Illinois Tort Immunity Act). Indeed, Defendant Officers' Answer to Plaintiff's First Amended Complaint includes the "affirmative defenses" of tort immunity under Sections 2-201, 2-202, and 2-102. (*See* R.22, Def. Officers' Answer, Affirmative Defenses, ¶¶ 1-4.) As such, the facts required to defeat immunity are not required at the pleading stage and the facts as alleged do not establish that immunity irrefutably applies.[4] At the pleading stage, a plaintiff's burden "should be commensurate with the amount of information available" to her. *Olson*, 784 F.3d at 1100. Here, as discussed above, Plaintiff's claims for wrongful death, survival, and funeral expenses are sufficiently pled to withstand a motion to dismiss based on Officers Sampim, Zodo and Bowery's presence and involvement at the scene of McIntosh's death. Accordingly, Sections 4-102 and 2-204 do not, at this stage, shield Defendant Officers from liability and the Court denies their motion to dismiss Counts III, IV, and V. *See Thomas ex rel. Smith v. Cook Cnty. Sheriff*, 401 F.Supp.2d 867, 876 (N.D. Ill. 2005).

### B. Plaintiff's Battery Claim is Insufficiently Pled

Under Illinois law, battery "in its simplest terms, is defined as the 'unauthorized touching of the person of another'". *Wilson*, 758 F.3d at 879 (*citing Curtis v. Jaskey*, 326 Ill.App.3d 90, 259 Ill.Dec. 901, 759 N.E.2d 962, 964 (2001)); *see also Luss v. Vill. of Forest Park*, 377

---

[4] The cases upon which Defendant Officers rely do not change this fact as they address state law claims during summary judgment. (*See* R.20, at 5.)

Ill.App.3d 1087, 1090 (Ill.App.Ct. 2007). Defendant Officers argue that Plaintiff has failed to provide factual support for her allegations that Defendants Sampim, Zodo, and Bowery made any physical contact with McIntosh, as required for a battery claim. (*See* R.20, at 5-6; R..30, at 4-5.) Plaintiff responds that the claim is sufficiently pled by the allegation that each Defendant "knowingly and without justification caused bodily harm to McIntosh when they shot and killed him, and/or made physical contact with him." This allegation, however, is insufficient to satisfy a claim for battery. Plaintiff alleges that Defendant Officers were present at the scene, chased McIntosh and were present in the backyard when Defendant Schlecter shot McIntosh. Plaintiff, however, does not allege any supporting facts that indicate Defendants Sampim, Zodo, and Bowery made physical contact with McIntosh. The cases upon which Plaintiff relies do not alter this outcome as they all include factual circumstances that necessarily implicate direct contact between the plaintiff(s) and the defendant(s). *See Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1044 (7th Cir. 2002) (emphasis added) (holding an officer can be liable for battery for *cracking plaintiff's tooth during a breath-screening test*); *Ford v. Davis*, 878 F.Supp. 1124, 1126, 1130 (N.D. Ill. 1995) (emphasis added) (denying a motion to dismiss a battery claim where the complaint alleged that the defendants *physically abused the plaintiff for a period of minutes using their fists, feet, and flashlights*); *Bedenfield v. Shultz*, 2002 WL 1827631 (N.D. Ill. Aug. 7, 2002) (emphasis added) (finding officers can be liable for battery for using excessive force *while arresting* the plaintiff); *Clark v. City of Chicago*, No. 10 C 0893, 2010 WL 4781467, at *3 (N.D. Ill. Nov. 17, 2010) (emphasis added) (finding the plaintiff's excessive force claim sufficiently pled where the plaintiffs allege they were *severely beaten by several officers* because "it is not reasonable to expect [the plaintiffs] to be able to provide a detailed, blow-by-blow recitation of who did what and when"); *Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000) (emphasis added)

13

(summary judgment on excessive force denied to a group of police officers where the *plaintiff was physically abused by one of the officers* whom the plaintiff could not identify while handcuffed on the ground). Plaintiff fails to allege any facts that suggest physical contact between McIntosh and Defendants Sampim, Zodo and Bowery. Plaintiff's conclusory allegation of "physical contact" between McIntosh and Defendants Sampim, Zodo, and Bowery is, therefore, insufficient. *See Ray v. City of Chicago,* 629 F.3d 660, 662 (7th Cir. 2011) ("[W]e need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.") (internal citations omitted). As such, the Court grants Defendant Officers' motion in this regard and dismisses Count VIII as against Defendants Sampim, Zodo, and Bowery, without prejudice.

### C. Plaintiff's Requests for Punitive Damages in Counts III, IV, and V Are Stricken

Defendant Officers argue that Plaintiff's request for relief in the form of punitive damages on her wrongful death (Count III), survival (Count IV), and funeral expenses claims (Count V) is not available under Illinois law and thus the Court should strike it. (*See* R.20, at 6.) Plaintiff responds and "agrees to voluntarily withdraw any request for punitive damages in its wrongful death, survival and funeral expenses claims." (*See* R.29, at 2, n. 1.) Accordingly, the Court denies as moot Defendant Officers' motion in this regard and strikes Plaintiff's requests for punitive damages in Counts III, IV, and V.

### II. Defendant City's Motion to Bifurcate and Stay Discovery and Trial of Plaintiff's *Monell* Claim

Defendants claim that bifurcation of Plaintiff's *Monell* claim is warranted because: (1) it best serves the interest of efficient litigation and judicial economy, (2) it will help prevent undue prejudice, and (3) it will not affect Plaintiff's recovery of compensatory damages. Defendant City has consented to the entry of judgment against it for the amount of damages caused by the

violation, plus reasonable attorney fees, if bifurcation and stay of trial and discovery is granted and the Defendant Officers are found to have violated Plaintiff's constitutional rights. According to Defendant City, this concession benefits Plaintiff because she would not be required to prove the elements of Section 1983 municipal liability. Plaintiff responds that judicial economy would not be served by bifurcation and stay of discovery on the *Monell* claim because it would undermine the independent importance of holding a municipality liable under *Monell* and would be unduly burdensome and require duplication. Plaintiff further responds that Defendant City has not shown, at this stage of the litigation, how it will suffer undue prejudice and any potential prejudice can be cured through instructions to the jury and evidentiary challenges. Lastly, Plaintiff responds that litigation of her *Monell* claim yields non-economic benefits and pragmatism that are otherwise unachievable.

### A.   Efficiency and Judicial Economy

In support of its position that bifurcation and a stay of discovery promote economic interests of the Court and the parties, Defendant City contends that "liability against the individual defendants remains a necessary predicate for municipal liability." (*See* R.28, at 5.) In *Thomas v. Cook County Sheriff's Department*, however, the Seventh Circuit rejected this argument explaining there is no hard and fast rule that individual officer liability is always required in order to find liability under *Monell*. *See Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010). Instead, the Seventh Circuit found that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." *Thomas*, 604 F.3d at 305; *see also Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015).

Providing additional guidance, the Seventh Circuit instructs district courts to look at the

factual relationship between the underlying constitutional violation and the *Monell* claim, as well

as the relief requested, in order to determine when establishment of a *Monell* claim is necessarily

predicated on proving the underlying liability of the individual officers, stating:

> If a § 1983 plaintiff seeks only monetary relief, and if a municipal defendant is
> willing (or required) to indemnify individual defendants for compensatory
> damages as well as an award of attorney's fees and costs, a *Monell* claim against
> the municipality will offer a prevailing plaintiff no additional remedy (aside,
> perhaps, from nominal damages). In such cases, there is no need for the parties to
> spend time and money litigating a *Monell* claim. If the plaintiff fails to prove a
> violation of his constitutional rights in his claim against the individual defendants,
> there will be no viable *Monell* claim based on the same allegations. *See e.g., City
> of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806
> (1986). Accordingly, the judge's decision to stay the *Monell* suit while the claims
> against the individual officers were litigated to judgment was sensible, especially
> in light of the volume of civil-rights litigation that district courts must manage.
>
> In some civil-rights cases, however, a verdict in favor of individual defendants
> would not necessarily be inconsistent with a plaintiff's verdict on a factually
> distinct *Monell* claim. *See e.g., Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d
> 293, 305 (7th Cir. 2010). In still other cases, the plaintiff may want injunction
> against future constitutional violations or some other equitable remedy, and he
> may be willing to invest the time and effort needed to prove his entitlement to that
> relief. In such cases, and this is one, the plaintiff is entitled to try to prove his
> *Monell* claim. Some cases have remedial import beyond the individuals
> plaintiff's claim for monetary damages, and § 1983 provides a vehicle for
> obtaining other judicial relief against governmental policies that violate
> constitutional rights. *See generally* David F. Hamilton, *The Importance and
> Overuse of Policy and Custom Claims: A View From One Trench*, 48 DEPAUL
> L.REV. 723, 734-35 (1999).

*Swanigan*, 775 F.3d at 962.

Turning to these factors in the case at hand, the nature of the constitutional violation at

issue is a Fourth Amendment unconstitutional seizure claim. (R.12, ¶¶ 20-40 (Count II).) The

claim for unconstitutional seizure refers to "the actions of Defendant Slechter in stopping Roshad

McIntosh and shooting him with a firearm without just cause" which implicates not only an

unconstitutional seizure claim, but one of excessive force. (*See* R.12, ¶ 18.) Regarding

Defendants Sampim, Zodo and Bowery, Count II refers to their actions "in failing to intervene to prevent said abuse, despite having the opportunity to do so". (*Id.*) The unconstitutional seizure claim further states that these actions violated McIntosh's rights under the Fourth Amendment "to be secure in his person against unreasonable seizure, and his right to due process … and caused the injuries set forth above." (*Id.*) Plaintiff's *Monell* claim alleges that the Defendant City's unconstitutional policies, practices and customs were a moving force and a proximate cause of McIntosh's death. Plaintiff alleges "[t]he actions of Defendants Slechter, Sampi[m], Zodo and Bowery as alleged above were done pursuant to one or more interrelated *de* facto policies, practices and/or customs of the City of Chicago, its police department, Police Board, I.P.R.A., I.A.D., Personnel Division, and/or Superintendents." (*See* R.12, ¶ 22.) The underlying claims are, in part, premised on the actions of the individual defendants, but are also based on the presence of policies, practices and customs which include "the failure to properly train and supervise Chicago police officers with regards to discharging their weapons at civilians, particularly at young Black men." (*Id.*, ¶ 23.)

Plaintiff's constitutional claim alleging unconstitutional seizure and failure to intervene and eluding to excessive force and due process violations, although somewhat inartfully pled,[5] refers to various constitutional violations that factually overlap with, but may still be distinct from, the *Monell* allegations. The mere presence of factual overlap, however, does not mandate that the verdict on liability becomes a necessary predicate, dictating the verdict of Plaintiff's *Monell* claim. At this early stage of litigation, prior to depositions of any individual defendants and the production of policy and training documents, it is premature to unequivocally state that

---

[5] Plaintiff's unconstitutional seizure claim and the *Monell* claim were not challenged by Defendant Officers in their Rule 12(b)(6) partial motion to dismiss. (*See* R.20, at 1-2 (solely seeking dismissal of Plaintiff's state law claims and related recovery of punitive damages).)

there can be no municipal liability in the absence of underlying individual liability. Based on the parties' current positions, however, it is plausible to understand a situation in which differing verdicts of these claims would be compatible—namely based on the Defendants' assertion of immunity. Individual public employees are entitled, where applicable, to the defense of qualified immunity, *see generally Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), but municipalities are not. *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Indeed, all Defendants have answered and asserted various forms of immunity from liability—qualified immunity and state-law immunity. (*See* R.22, Def. Officers' Partial Answer, Affirmative Defenses, ¶¶ 1-4, 7 (asserting state-law immunity and qualified immunity); R.27, Def. City's Answer, Affirmative Defenses, ¶¶ 5-8 (asserting state-law immunity)).[6] As such, bifurcation may not avoid a second trial if the officers are immune, and that second trial (of the *Monell* claim) would likely duplicate the first trial against the individual officers. *See e.g., Martinez v. Cook Cnty.*, No. 11 C 1794, 2011 WL 4686438, at *1-2 (N.D. Ill. Oct. 4, 2011) (denying bifurcation and stay of discovery, in part, because the defendant asserted a qualified immunity defense that he was following a "cross-watching" policy authorized by the Sheriff when the inmate was battered by other inmates); *Clarett v. Suroviak*, No. 09 C 6918, 2011 WL 37838, at *1-3 (N.D. Ill. Jan 3, 2011) (denying bifurcation because if the officers were found not liable based on their qualified immunity defense, "there would still be a need for a second duplicative trial as to the Village's liability"); *Terry v. Cook Cnty. Dep't of Corrections*,

---

[6] Although in addressing the Defendant City's proposed limited consent to entry of judgment Plaintiff contends that "this is not the type of case where qualified immunity or scope of employment are real concerns" (R.35, at 14), Plaintiff focuses on the use of deadly force, which would, based on the factual allegations of Plaintiff's First Amended Complaint, only applies to Defendant Schlecter's shooting of McIntosh. Defendant Officers Sampim, Zodo and Bowery have also asserted the qualified immunity affirmative defense, however, and these assertions would directly relate to claims of constitutional violation against them and the role that any policies, practices and customs in place at the time of McIntosh's shooting played in dictating their actions or inactions.

No. 09 C 3093, 2010 WL 2720754, at *2-3 (N.D. Ill. July 8, 2010) (denying bifurcation because, among other things, a jury could find the defendants liable for creating the environment in which the officers and medical professionals did not have the resources to do more than what they did); *Medina v. City of Chicago*, 100 F.Supp.2d 893, 896 (N.D. Ill. 2000) (denying bifurcation because, among other things, the individual officers asserted qualified immunity).

In addition, because of the early stage at which Defendants brought this motion, it is premature to speculate on the full breadth of discovery necessary for the constitutional violation and *Monell* claims or on the complexity of a trial over these claims. The factual overlap already apparent between them, however, warrants preservation of duplicating resources by a mutual discovery process related to these claims prior to trial. Indeed, rather than simplifying the discovery process over the course of this litigation, bifurcation at this stage may add unnecessary complexity and confusion. Without reference to any specific concern in Plaintiff's discovery requests, Defendants generally argue that the discovery process will be "colossal", unduly burdensome, and "will encompass a significant period of time predating the incident underlying this lawsuit and will involve the systemic policies and practices of the City during the relevant time period, including the Chicago Police Department's Bureau of Internal Affairs, the Personnel Division, the Police Board, the Independent Police Review Authority, and the City Council oversight activity of these municipal entities." (*See* R.28, at 5.) Plaintiff responds that *Monell* discovery will be "straight forward and manageable" and "categorized and finite" since the requested documents have likely been produced in other litigations and "are compiled by the [I.P.R.A.] within their investigation files into each 'officer involved shooting.'" (*See* R.35, at 7-8.) Keeping Plaintiff's representations in mind, a denial of bifurcation at this point surely requires Defendants to disclose documents and likely submit to depositions related to various

policies and procedures that were maintained and followed at and around the time of McIntosh's shooting. To the extent, however, that Defendants find Plaintiff's *Monell* discovery requests overly broad or imposing undue burden and expense, the parties can seek assistance from the Court to tailor the requests as necessary after making independent good faith attempts to do so. *See e.g., Terry*, 2010 WL 2720754, at *3.

Accordingly, the early stage of litigation makes a clear determination of judicial economy favoring bifurcation in this case speculative at best and when weighed against the fact that the plaintiff is the master of her complaint, Defendants speculative assertions of the potentially high costs associated with bringing a claim for municipal liability do not sway the Court's consideration. *See Awalt v. Marketti*, No. 11 C 6142, 2012 WL 1161500, at *11 (N.D. Ill. Apr. 9, 2012) (*citing Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) ("The [well-pleaded complaint] rule makes the plaintiff the master of the claim …")); *id.*, (*citing The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed.716 (1913) ("Of course, the party who brings a suit is master to decide what law he will rely upon").

## B. Undue Prejudice

Discovery in this case has just begun, which makes an analysis of undue prejudice premature and too speculative at this stage. Defendant City argues that a jury that finds the individual officers liable could perhaps unfairly and incorrectly find the Defendant City also liable under *Monell*. At this stage of the litigation, however, neither Plaintiff nor Defendants know what evidence will actually be offered at a trial to establish the individual officers' liability and Defendant City's liability. Without knowing what the evidence is and the actual prejudice being faced, the Court cannot properly assess the potential for any undue prejudice against the individual officers in having to present their case with Defendant City. To the extent that

Defendants continue to have concerns of undue prejudice, the Court—at a later stage—may still order a bifurcation of trial or can "restrict the evidence to its proper scope and instruct the jury accordingly." *See* Fed. R. Evid. 105; *see also Marshbanks v. City of Calumet*, No. 13 C 2978, 2015 WL 1234930, at *5 (N.D. Ill. Mar. 16, 2015) (explaining that potential prejudice at trial is "best cured by proper jury instructions and pre-trial evidentiary challenges"); *Awalt*, 2012 WL 1161500, at *13 ("The [c]ourt has at its disposal an[y] number of tools to properly order and organize a trial that will not be unfairly prejudicial to any of the [d]efendants").

### C. Pragmatism and Recovery of Damages

Defendant City argues that bifurcation and stay of discovery and trial as to Plaintiff's *Monell* claim will not affect Plaintiff's recovery of any compensatory damages that a jury may award. Defendant City admits that Defendant Officers "were acting within the scope of their employment at all relevant times during their encounter with Plaintiff." (R.28, at 8.) This concession means that as directed under Illinois law, Defendant City has a statutory and a contractual obligation to indemnify Defendant Officers for any judgment against them. *See* 735 ILCS 10/9-102. By the same token, Defendant argues, Plaintiff—as a matter of law—is not entitled to recover any additional compensatory damages if she prevails against Defendant City on her *Monell* claim. Plaintiff's inability to recover additional damages removes her economic incentive to proceed with her *Monell* claim, according to Defendant, and only introduces concerns of potential abuse of the fee-shifting provisions of Section 1988. To memorialize their position, Defendants have proferred a "Limited Consent to Entry of Judgment Against Defendant City of Chicago" which would relieve Plaintiff of her burden to establish municipal liability as long as she proves her decedent's constitutional rights were violated by the actions or inactions of Defendants Slechter, Sampim, Zodo, and/or Bowery. (*See* R.28, at 2, 12-14; R.28-6, Ex. J,

Limited Consent to Entry of Judgment Against Def. City.) While Plaintiff acknowledges that pursuit of her *Monell* claim will not yield any monetary benefit beyond that obtained from a finding of liability on the part of Defendant Officers in McIntosh's death, Plaintiff also asserts non-economic motivators for her litigation. Namely, Plaintiff contends that "[p]roving unconstitutional policies, practices or customs is a significant victory for the Plaintiff as a private attorney general vindicating the underlying Congressional intent for the Civil Rights Acts." (R.35, at 11 (*citing Cadiz v. Kruger*, No. 06 C 5463, 2007 WL 4293976, at *10 (N.D. Ill. Nov. 29, 2007).) Defendant City's limited consent to entry of judgment does not extinguish Plaintiff's *Monell* claim. If Defendant City's motion succeeds at this early stage on Defendant's generalities, however, it effectively deprives Plaintiff of her right and ability to be the "master of [her] complaint and proof," and to proceed, as is guaranteed by the Supreme Court and 42 U.S.C. § 1983, on her independent *Monell* claim against Defendant City. *See e.g., Holmes v. Group, Inc. v. Vornado Air Circulations Sys, Inc.*, 535 U.S. 826, 831 (2002); *Garbie v. Daimler Chrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000).

Plaintiffs in Section 1983 civil actions have other important objectives, which Defendant City does not deny exist. (*See e.g.,* R.43, at 8.) These objectives include deterrence and reform that would be furthered by a judgment holding Defendant City liable for Defendant Officers' misconduct. Plaintiff argues that Defendant City has "allowed police officers to fatally shoot young Black men with impunity" and that its "failure[] to train, supervise and discipline, lead [sic] these individual Defendant Officers to either shoot or fail to intervene." (R.35, at 12.) A judgment against a municipality can be a catalyst for change, because it "not only holds that entity responsible for its actions and inactions, but also can encourage the municipality to reform the patterns and practices that led to constitutional violations, as well as alert the municipality

22

and its citizenry to the issue." *Medina*, 100 F.Supp.2d at 897 (*citing Amato v. City of Saratoga Springs*, 170 F.3d 311, 317-19 (2d Cir. 1999)).

Furthermore, bifurcation of this case at such an early stage is not in the interests of Rule 42(b)'s purposes. It is premature to find that a complete separation of discovery and trial are warranted and conducive to expedition and economy based on generalizations being made at the dawn of discovery. *See* Fed. R. Civ. P. 42(b); see also *Chlopek,* 499 F.3d at 700. Balancing the considerations of convenience, economy, expedition, and prejudice, absent additional information, is simply too speculative. *See Houskins*, 549 F.3d at 495. The Court recognizes, however, that factual overlap exists between Plaintiff's *Monell* claim and the Defendant Officers' individual liability based on unconstitutional seizure, use of deadly force, and failure to intervene. The Court further recognizes that progression of discovery will define the factual contours in this case and may indicate that a liability determination against Defendant Officers is in fact a necessary predicate for establishing the *Monell* claim. Plaintiff's *Monell* claim is ultimately based on the injury resulting from McIntosh's shooting and death—a single incident that occurred between identified parties, namely, McIntosh and Defendant Officers. Because *Monell* claims carry a heavy burden of discovery and proof, the Court finds that while bifurcation of trial and stay in discovery of the *Monell* claim is not warranted at this early stage, a sequential assignment in the discovery process is. In particular, because a single incident between identifiable parties underlies this case, prioritization of the discovery surrounding that incident is beneficial. Accordingly, the Court directs the parties to defer discovery on the *Monell* claim until after the completion of fact discovery on the claims against Defendant Officers.[7]

---

[7] This does not preclude Plaintiff from inquiring of the individual Defendant Officers at their depositions as to subjects that might also pertain to her *Monell* claim.

While not foreclosing the opportunity for Plaintiff to further develop her case against the individual Defendant Officers through *Monell* discovery relating to the Defendant City's policies, practices and procedures, this sequential movement of the discovery process will prioritize the claims of a smaller and more manageable dispute between the parties. To the extent that dispute encourages or results in a more narrow focus to the claims against Defendants or even potentially disposes of any portion of the case by agreement, the purposes of Rule 42(b) will have been served.

## CONCLUSION

For the forgoing reasons, the Court grants in part and denies in part Defendant Officers' partial motion to dismiss. The Court further denies Defendant City's motion to bifurcate Plaintiff's *Monell* claims and stay discovery and trial on those claims pending resolution of the claims against Defendant Officers, without prejudice to a renewed motion for bifurcation of trial after discovery is completed.

**DATED: September 2, 2015**

ENTERED

_____
AMY J. ST. EVE
United States District Court Judge

24