1

```
 1              IN THE UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF ILLINOIS
 2                   EASTERN DIVISION

 3

    ESTATE OF ROSHAD MCINTOSH DECEASED,  ) Docket No. 15 C 1920
 4  BY CYNTHIA LANE, ADMINISTRATOR,      )
                                         )
 5                        Plaintiff,     )
                                         )
 6             vs.                       )
                                         )
 7  CITY OF CHICAGO, et al.,             ) Chicago, Illinois
                                         ) May 24, 2017
 8                        Defendants.    ) 9:30 o'clock a.m.

 9

10            TRANSCRIPT OF PROCEEDINGS - MOTION
            BEFORE THE HONORABLE AMY J. ST. EVE

11

    APPEARANCES:
12

13  For the Plaintiff:        ODIM LAW OFFICES
                              BY:  MR. CARLTON E. ODIM
14                            225 W. Washington St., Suite 2200
                              Chicago, Illinois  60606
15
                              ACTION INJURY LAW GROUP, LLC
16                            BY:  MR. ANDREW M. STROTH
                              191 North Wacker Dr. Suite 2300
17                            Chicago, Illinois  60606

18
    For Deft. City of         ROCK, FUSCO & CONNELLY, LLC
19  Chicago:                  BY:  MS. STACY A. BENJAMIN
                              321 North Clark Street, Suite 2200
20                            Chicago, Illinois  60654

21
    For Defts. Zodo,          CITY OF CHICAGO, DEPARTMENT OF LAW
22  Slechter and Bowery:      BY:  MR. JULIAN M. JOHNSON
                              30 N. LaSalle Street, Suite 900
23                            Chicago, Illinois  60602

24

25
```

```
 1   APPEARANCES (Cont'd):

 2
     For Deft. Sampim:            BORKAN & SCAHILL, LTD.
 3                                BY:  MS. WHITNEY N. HUTCHINSON
                                  20 South Clark Street, Suite 1700
 4                                Chicago, Illinois 60606

 5
     Court Reporter:             MR. JOSEPH RICKHOFF
 6                               Official Court Reporter
                                 219 S. Dearborn St., Suite 1232
 7                               Chicago, Illinois  60604
                                 (312) 435-5562
 8

 9              *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

10                       PROCEEDINGS RECORDED BY
                         MECHANICAL STENOGRAPHY
11                  TRANSCRIPT PRODUCED BY COMPUTER

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    THE CLERK:  15 C 1920, Lane vs. City of Chicago.

2    THE COURT:  Good morning.

3    MR. ODIM:  Good morning, your Honor, Carlton Odim for

4    the plaintiff.

5    MR. STROTH:  Good morning, your Honor, Andrew Stroth

6    on behalf of the plaintiff.

7    MS. BENJAMIN:  Good morning, your Honor, Stacy

8    Benjamin for defendant City.

9    MR. JOHNSON:  Good morning, Julian Johnson for the

10   individual defendant officers except for defendant Sampim.

11   MS. HUTCHINSON:  Good morning, your Honor, Whitney

12   Hutchinson on behalf of defendant Sampim.

13   THE COURT:  Good morning.

14   You are back here this morning on your discovery

15   issue with respect to the 30(b)(6) witness.

16   Before we start, I just want to disclose -- I did not

17   look at the transcript when you gave it to me yesterday in

18   court, but I did after court and I know Commander Klimas.  I

19   worked with him when he was an FBI agent, both in Little Rock

20   and in Chicago.  It does not impact anything I do, but I

21   wanted to disclose it in case you have an issue with that.

22   The person here is not what is relevant to the dispute, but I

23   wanted you to know that.

24   MR. ODIM:  Thank you.

25   THE COURT:  So, if you have an issue with that, you

 1    can certainly let me know.

 2           So, I think I know what your issue is from reading

 3    this, but why don't you articulate it for me, Mr. Odim.

 4           MR. ODIM:  Well, I think the issue is whether or not

 5    the City has a duty to substitute a witness who can testify

 6    about the institutional knowledge, collective knowledge of the

 7    City of Chicago.  The transcript is replete with Klimas's

 8    statements that he is only talking for the CPD.  At one point,

 9    even counsel said that he is only talking for the CPD.  Well,

10    this is a question of the duty to produce someone who is

11    competent to testify.

12           You know, the subsidiary issues -- I consider them

13    subsidiary -- the scope of -- beyond the scope, I think,

14    are -- their "beyond the scope" argument is really a mask.

15    It's really not a "beyond the scope of the notice."  It's a

16    "beyond the scope of the knowledge of the witness who was in

17    the chair at the time."

18           Clearly, the topics are set forth in the 30(b)(6).

19    Counsel vigorously challenged --

20           THE COURT:  I think we spent an hour-and-a-half here

21    one day on it.

22           MR. ODIM:  Yes.

23           We crafted that document.  The idea that somehow the

24    proponent of the notice is to define all the terms before they

25    become relevant for a 30(b)(6) defeats the purpose.

1          There's law that -- there's a very nice case that I

2    like to refer to, which talks about the designee must present

3    the corporation's, quote-unquote, position; its, quote,

4    subjective beliefs, unquote; and, its opinions, quote-unquote;

5    and, its, quote, interpretation of documents and events.

6          That's the Great American case, 251 F.R.D.  And --

7          THE COURT:  Do you want to finish that cite.

8          MR. ODIM:  Yeah.  Let me get the full cite.  251

9    F.R.D. 534.  It's a 19 -- it's a 2008 case out of the District

10   of Nevada.

11         So, the idea that somehow I can't ask, you know, what

12   does the City believe about something, what is the City's

13   opinion about something, how does the City define the term

14   "code of silence" -- the mayor used it.

15         THE COURT:  It seems like -- and I am certainly not

16   going through question by question and telling you what you

17   can and cannot object to.  That is not the purpose.

18         It seems like the real question here is the scope of

19   the 30(b)(6), whether it is limited to the Chicago Police

20   Department or whether it is the City of Chicago.  And

21   Commander Klimas --

22         MS. BENJAMIN:  Your Honor, if I --

23         THE COURT:  -- made it pretty clear he can only speak

24   on behalf of CPD.

25         MS. BENJAMIN:  There may -- there was some initial

 1   confusion about that.  He was certainly speaking on behalf of

 2   the City.  He has done that on numerous occasions.

 3        My concern was the broad nature of the questions

 4   about the collective knowledge of a code of silence.  A code

 5   of silence is not unique to a police department or to the

 6   police department in the City of Chicago.  My concern for

 7   plaintiff's questions were that it encompassed every aspect of

 8   the City.

 9        And this is a police-related Monell claim.  So, I

10   needed to make sure that the questions that were being asked

11   were precise, and that the answers -- that we were all

12   operating under the same terminology and definitions.

13        And I think Commander Klimas clearly gave the

14   definition on behalf of the City of Chicago with regard to the

15   police department for a code of silence.

16        THE COURT:  Well, I think that is the problem -- when

17   you say the City of Chicago with respect to the police

18   department.  Because it is broader than just CPD.  In

19   particular -- and I just remember from media accounts -- it

20   would include the Mayor's Office and the positions that they

21   have or have not taken.  That would cover the City of Chicago.

22        Now, would it cover Streets and Sanitation and other

23   places where it has no relevance?  I do not think that is what

24   Mr. Odim is seeking.

25        But the City of Chicago is certainly broader than

1    just CPD.  And from Commander Klimas' responses, it was not

2    clear that he was answering beyond just CPD.

3             So, I do not know that there is a duty to substitute

4    so much as supplement.  If he is not the one who can answer

5    the questions on behalf of the City of Chicago, which would go

6    beyond just CPD -- you are saying he can; that is not what was

7    coming through in the deposition to me -- then you do have a

8    duty to add somebody else.

9             Now, as for the form of some of these questions, I

10   agree.  The form was problematic on some of these questions,

11   just the broad nature; but I think if you get the basic who is

12   the 30(b)(6) for down -- then there is a question about the

13   code of silence because he was saying that is not a term that

14   they use.  So, I think it would be helpful before you go in

15   the deposition if you reached some type of agreement on what

16   you are talking about with code of silence.

17             MR. ODIM:  Well --

18             MS. BENJAMIN:  That was Commander Klimas' critical

19   problem with beginning the deposition the way it did on this

20   issue, was that that is a term that is used -- and he

21   described it -- that's used in the media; it's used in now

22   case law; it's not something that is used by the police

23   department.  The City of Chicago is now aware of that term

24   through these cases, through that, but --

25             THE COURT:  Is not aware of it?

1        MS. BENJAMIN:  Is aware.

2        MR. ODIM:  See, that's just the problem here.  It's

3    not my definition that matters.  I simply want to know the

4    extent of, whether it's anemic or full-blooded, the City's

5    awareness of the term.  The mayor has used it.  Has anyone

6    gone to ask the mayor, what did you mean when you used the

7    term?

8        I certainly don't want to file a motion to take --

9    you know, he's an apex witness.  You know, he's busy.  That's

10   a waste of time.  Someone should go ask him and sit down and

11   tell me what's the knowledge.

12       THE COURT:  Well, I certainly think it is fair game

13   to ask -- although Commander Klimas has said CPD does not use

14   it, I think it is fair game to ask, what is the City of

15   Chicago's understanding of the term "code of silence," because

16   it has been used in cases.  Officers have testified about it

17   in my courtroom since 2008.

18       MS. BENJAMIN:  Your Honor --

19       THE COURT:  So, to ask him his understanding of it as

20   a City of Chicago 30(b)(6) witness is fair game.

21       MS. BENJAMIN:  I think that that was -- was asked and

22   answered at Page 54 of the transcript.  But we can clarify

23   because he does answer in there as used in the Chicago Police

24   Department.  And I think he did that simply because there is

25   other litigation against the City for a code of silence in

1    other types of departments.  I'm sure the fire department this

2    has come up, and I'm sure in other departments.

3              So, he was speaking in the context of what it means

4    in the police.  And that --

5              THE COURT:  And I --

6              MS. BENJAMIN:  -- was his definition for the --

7              THE COURT:  I understand that, but Mr. Odim, rightly

8    so, does not want to be boxed in that somehow this keeps out

9    the Mayor's Office --

10             MS. BENJAMIN:  Okay.

11             THE COURT:  -- which it should not.

12             Are there other City of Chicago departments that you

13   are looking to include in your 30(b)(6) City of Chicago?

14             I cannot believe -- I will use --

15             MR. ODIM:  Yes, no.

16             THE COURT:  -- Streets and Sanitation, because I --

17             MR. ODIM:  That's the -- you know, there's an old

18   saying that you don't have to eat the whole cow in order to

19   know what beef tastes like.  You know, unfortunately, the

20   reverse is here.  I have to know -- we have to inquire about

21   the collective knowledge of the City in order to know what the

22   collective knowledge of the City is.

23             THE COURT:  But is it fair to say when you are

24   talking about the City of Chicago, you really do mean the

25   Mayor's Office and the CPD for purposes of this case?

1          MR. ODIM:  Yeah, because, I mean, I can't imagine

2  that the activities that govern -- that deal with code of

3  silence go beyond those entities.  But --

4          THE COURT:  I cannot either.

5          MR. ODIM:  Yeah.

6          THE COURT:  And I have been doing these --

7          MR. ODIM:  And, so --

8          THE COURT:  -- cases for a long time.

9          MR. ODIM:  But, you know, with that caveat, whatever

10  is told to me wants to be on behalf of the whole City, binding

11  the whole City.

12          And, you know, my concern about this parsing, there's

13  one question I asked about -- I asked Mr. Klimas a question

14  and I asked for the basis of his answer.  I wouldn't give it.

15  He said he was testifying about the whole City, and he gave an

16  answer that the City has not -- he said the answer was, no,

17  the City has not asked any employee to commission, to do a

18  report about the code of silence.  Said he had not.  Then I

19  asked him what's the basis of that.  An objection.

20          So, what I don't want is this coy attempt to, you

21  know, reproduce someone who really doesn't -- hasn't made the

22  inquiry and cover his answer and then I'm not being able to --

23          THE COURT:  Sure.

24          MR. ODIM:  -- inquire into the basis of it.

25          THE COURT:  And that is fair.

1    I think you need to start out the deposition with an

2    understanding that when you say the whole City of Chicago,

3    that that refers to the Mayor's Office and CPD for purposes of

4    this case.  Because those are really the entities that are at

5    issue here.

6    My guess is the City's concern -- I do not know where

7    else "code of silence" is used, but let's say there is a fire

8    department case where there is a code of silence.  My guess is

9    that there is a concern that this could somehow be used in

10   that case down the road someday and --

11   MR. ODIM:  We could make the record clear.

12   THE COURT:  That is what I am --

13   MR. ODIM:  I mean, at least as I've told counsel,

14   that what I want is a clean record.  So, we can make that

15   record clear so there's no blow-back into another case.

16   THE COURT:  Just so you do not run into any problems

17   trying to make that clear.  And you should make this clear at

18   the beginning of the deposition.  But I will tell you that for

19   purposes of the 30(b)(6) and on behalf of the City of Chicago,

20   that the City of Chicago includes the Mayor's Office and the

21   Chicago Police Department.

22   MR. ODIM:  And maybe qualify that.  For instance, the

23   research department.  So, Klimas talks about how the Bureau of

24   Internal Affairs will send requests to the research

25   department.

    1            THE COURT:  But isn't that part of CPD?

    2            MR. ODIM:  Well, I just want to make sure that, you

    3    know --

    4            THE COURT:  Whole CPD.

    5            MR. ODIM:  Well, we're talking about all those

    6    entities or parastatals that deal with the questions or have

    7    dealt with the question of code of silence or use of force or

    8    any of the issues arising out of this case.

    9            THE COURT:  My understanding, from reading the

   10    deposition that you gave me and from handling these cases for

   11    15 years, is that those entities are all within the Chicago

   12    Police Department.

   13            MR. ODIM:  Okay.

   14            THE COURT:  Certainly, the internal affairs, the

   15    research department, that those are within.

   16            If he answers a question and you have a question

   17    about whether or not something is within CPD, you could

   18    certainly follow up with that.  But "City of Chicago" here is

   19    not limited to just CPD, but it is CPD and the Mayor's Office.

   20            Then as to code of silence -- it is not my job to

   21    define that for you, but I think if the two of you talked

   22    beforehand and had a general understanding of what you are

   23    referring to -- I know Klimas has repeatedly said, well, we

   24    don't have a definition of that because we don't use those

   25    words at CPD.

1          But I certainly think a 30(b)(6) witness here could

2   testify to his understanding or CPD and the City's

3   understanding of what "code of silence" means, given how much

4   litigation there is out there, given officers who I have heard

5   testify in other cases about it, and given the current mayor's

6   statements about it.

7          MR. ODIM:  And I also asked a question about use of

8   excessive force as it relates to police shootings in this

9   case.  We argued about it and we got -- I got the same answer.

10          THE COURT:  My definition of "City of Chicago" is not

11  limited just to code of silence.  It applies to all the

12  30(b)(6).

13          MR. ODIM:  Okay.

14          THE COURT:  So, again, I do not want to micromanage

15  each and every question here, but I think with that

16  clarification, you should be able to proceed with this

17  deposition.

18          MS. BENJAMIN:  Your Honor, I do have a point that he

19  just raised.  Commander Klimas was asked whether the City had

20  instructed any of its employees to conduct studies or prepare

21  reports about a code of silence.  Based on his definition that

22  he gave, he answered that question "No."  I don't understand

23  why plaintiff then has the ability to then, how do you know

24  that?  The answer is "No."  That's what the City lives by.  He

25  has institutional knowledge.

1    You know, plaintiff criticized his lack of asking --

2 or meeting with people.  Commander Klimas has been here a long

3 time.  He has given depositions on the subject.  He has vast

4 knowledge.  We didn't get a chance to really delve into that

5 vast knowledge.

6    But if his answer is no, his answer is no, and the

7 City lives by that.  So, I think further inquiry on that topic

8 in that fashion is improper.

9    THE COURT:  Certainly, the City --

10    MS. BENJAMIN:  Because you're proving a negative.

11    THE COURT:  Certainly, the City lives by it, but

12 Mr. Odim is entitled to test the basis of his statements to

13 some extent.  I do not know that I would waste a lot of your

14 deposition time on that.

15    Some of the questions did appear to be seeking advice

16 from counsel, which obviously those are off-limits.  And I

17 thought some of your observations were based on that.  To the

18 extent it is something he learned through Ms. Benjamin or

19 other counsel.  That is off-limits.

20    But to the extent you want to test the basis of his

21 knowledge to some extent, I think that is fair game.

22    MS. BENJAMIN:  Judge, and our other problem was when

23 we were talking about the Department of Justice report and the

24 task force report, these global kind of questions about

25 findings and conclusions, you know, these kind of imprecise

1    questions are wholly inappropriate for the City to just be --

2    we are not defending the Department of Justice report in this

3    case.  That is not -- this is not the Department of Justice

4    filing a lawsuit against the City.

5          So, if there are, you know, particular items that

6    want to be inquired on, you know, that was another part of our

7    objection.  And, then, there were additional questions about,

8    well, what has the City done since getting these reports?

9    Again, that's now outside of the scope of our time frame.

10          THE COURT:  Since getting the reports, that is

11    outside -- or since getting the DOJ report, that is outside

12    the scope of the 30(b)(6).  And I know we spent some time on

13    the time frame for the 30(b)(6).

14          The DOJ report, if I remember, is upwards of 70 pages

15    and has multiple findings.  So --

16          MS. BENJAMIN:  It's a hundred and something.

17          THE COURT:  -- asking a question about all the

18    findings seems pretty broad.  If you want to focus it --

19          MR. ODIM:  I couldn't go down the road, right?  I

20    started the road and I got the block.  So, that would have

21    been where I got.

22          And recall that it was Klimas who first introduced

23    the DOJ report, you know.  So, I was trying to find a way to

24    get into the issue.  And I certainly would break it down if I

25    had to -- no, when I have to.  So, that I understand.  That I

1    understand clearly.

2              THE COURT:  Okay.

3              So, you should be able to go forward now with this.

4              MR. ODIM:  Thank you, Judge.

5              MS. BENJAMIN:  So, Judge, we do have a problem with

6    Commander Klimas.  He will still be the City's witness.  We

7    will work further with him based on your Honor's rulings here

8    and make it clear that he understands the scope of his

9    testimony.  The problem is he is out of town now until the

10   19th of June, which it puts us outside of our schedule.

11             And, then, we also had additional problems with

12   another witness who will be speaking on behalf of IPRA --

13             THE COURT:  Why don't you work --

14             MS. BENJAMIN:  -- who's deployed.

15             THE COURT:  -- and get the dates in place and then

16   come back with a proposal.

17             MR. ODIM:  Okay.

18             THE COURT:  Why don't you work and agree and get your

19   witnesses locked in on dates and then come back with a

20   proposal, rather than asking to move and asking to move and

21   then finding out there is a problem.

22             MR. ODIM:  Okay.

23             THE COURT:  So, work with your schedules --

24             MS. BENJAMIN:  Submit a schedule or --

25             THE COURT:  -- work with the witnesses' schedules,

1    and then submit a schedule to me by June 1st with your

2    proposed schedule.

3          MR. ODIM:  Judge, we can do that without physically

4    coming in?

5          THE COURT:  Absolutely.

6          MR. ODIM:  Okay.

7          THE COURT:  Just file a proposed schedule for going

8    forward.

9          MR. ODIM:  Okay.

10         THE COURT:  Ms. Benjamin, do you want your Exhibit --

11         MS. BENJAMIN:  No.

12         THE COURT:  -- 1 back?

13         MS. BENJAMIN:  Recycle.

14         THE COURT:  This one has your handwritten notes on

15   it.  I did not know if you wanted it.

16         MS. BENJAMIN:  I'm sorry.  I did not mean to do that,

17   Judge.

18         THE COURT:  That is all right.  You gave me two.  I

19   think you may have accidentally given me the second one.

20      (Document tendered.)

21         MS. BENJAMIN:  No work product there, your Honor.  No

22   secret notes to you.  As I can tell, I wrote a few things.

23      (Laughter.)

24         MR. ODIM:  Can I see?  No.

25         THE COURT:  I could not read all of them.

```
 1        (Laughter.)

 2             THE COURT:  And I worked off of the other one you

 3   gave me.

 4             Come back here in about 30 days.

 5             THE CLERK:  June 26th at 9:00 a.m.

 6             THE COURT:  Does that work okay --

 7             MS. BENJAMIN:  Yes.

 8             MR. ODIM:  Yes.

 9             THE COURT:  -- with summer vacations?

10             I would like you also, before you come back in June,

11   to have some additional settlement discussions now that you

12   are in these Monell depositions and should have, hopefully,

13   all of them completed by then.  Have those discussions and we

14   will revisit, again, the question of going to see Magistrate

15   Judge Finnegan for a settlement conference.

16             MR. ODIM:  Thank you again, Judge.

17             MS. BENJAMIN:  Thank you.

18             THE COURT:  Thank you.

19             MR. JOHNSON:  Thank you.

20             MS. HUTCHINSON:  Thank you.

21                         *    *    *    *    *

22   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
23

24
     /s/ Joseph Rickhoff                      May 25, 2017
25   Official Court Reporter
```