```
                                                                    1

               IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION

ESTATE OF ROSHAD MCINTOSH DECEASED, ) Docket No. 15 C 1920
BY CYNTHIA LANE, ADMINISTRATOR,     )
                                    )
                    Plaintiff,      )
                                    )
         vs.                        )
                                    )
CITY OF CHICAGO, et al.,            ) Chicago, Illinois
                                    ) May 25, 2016
                    Defendants.     ) 9:20 o'clock a.m.

         TRANSCRIPT OF PROCEEDINGS - STATUS & MOTION
            BEFORE THE HONORABLE AMY J. ST. EVE

APPEARANCES:

For the Plaintiff:        PEOPLE'S LAW OFFICE
                          BY:  MS. JANINE L. HOFT
                               MS. SHUBRA OHRI
                          1180 North Milwaukee Avenue
                          Chicago, Illinois  60462

For Deft. City of         CITY OF CHICAGO, DEPARTMENT OF LAW
Chicago:                  BY:  MS. MARION C. MOORE
                          30 N. LaSalle St., Suite 900
                          Chicago, Illinois  60602

For Defts. Zodo,          CITY OF CHICAGO, DEPARTMENT OF LAW
Slechter and Bowery:      BY:  MR. JASON M. MARX
                          30 N. LaSalle Street, Suite 900
                          Chicago, Illinois  60602

For Deft. Sampim:         BORKAN & SCAHILL, LTD.
                          BY:  MR. NICHOLAS K. FEDDE
                          20 South Clark Street, Suite 1700
                          Chicago, Illinois 60606

Court Reporter:           MR. JOSEPH RICKHOFF
                          Official Court Reporter
                          219 S. Dearborn St., Suite 1232
                          Chicago, Illinois  60604
                          (312) 435-5562
              * * * * * * * * * * * * * * * * *
                     PROCEEDINGS RECORDED BY
                      MECHANICAL STENOGRAPHY
                  TRANSCRIPT PRODUCED BY COMPUTER
```

1           THE CLERK:  15 C 1920, Lane vs. City of Chicago.
2           THE COURT:  Good morning.
3           MS. OHRI:  Good morning, your Honor, Shubra Ohri on
4    behalf of plaintiff.
5           MS. HOFT:  And Janine Hoft also on behalf of
6    plaintiff.
7           MR. FEDDE:  Good morning, your Honor, Nick Fedde on
8    behalf of defendant Sampim.
9           MR. MARX:  Good morning, Judge, Jason Marx on behalf
10   of defendants Slechter, Zodo and Bowery.
11          MS. MOORE:  Good morning, your Honor, Marion Moore on
12   behalf of the City.
13          THE COURT:  You are here for status, as well as on
14   plaintiff's motion to extend time; and, I have the motion to
15   compel that is fully briefed.
16          Why don't you tell me the status first.
17          MS. OHRI:  Your Honor, we're currently going through
18   defendants' Monell production, so -- we just received that, I
19   believe, last week or the week before.  And we have a lot of
20   discovery to go through right now.
21          THE COURT:  Okay.
22          MS. OHRI:  Besides that, we've asked for a motion to
23   extend for our expert disclosures, which you have in front of
24   you.
25          THE COURT:  Yes.

1           MS. OHRI:  We asked for -- to July 18th.  And we'd
2  expect that if we push the other deadlines for non-Monell fact
3  experts, that that would put us at -- we would complete
4  depositions of defendants' experts right about the same time
5  that we would complete the depositions for the Monell experts.
6           THE COURT:  And defendants are in agreement with
7  that?
8           MR. MARX:  Yes.  I don't oppose that.
9           MR. FEDDE:  There's no objection.
10          MS. OHRI:  So, your Honor, we would suggest pushing
11 the other dates -- the dates that we would complete
12 depositions of -- they would complete the depositions of --
13 our experts, the dates that they would have to disclose their
14 experts for non-Monell fact discovery, and the date that we
15 would have to complete their -- depositions of their experts
16 -- two months.
17          THE COURT:  It is really helpful when you file these
18 motions to put all of your new proposed dates in --
19          MS. OHRI:  Sure.
20          THE COURT:  -- because now you are throwing a lot of
21 other dates at me that I do not have in front --
22          MS. OHRI:  Yeah.
23          THE COURT:  -- of the Court, which when Katie does
24 the order makes it challenging for her.
25          So, give me the dates that you want moved and what

1   you want them moved to, please.
2            MS. OHRI:  Okay.
3            We would like our expert disclosures to be -- the
4   deadline to be July 18th.
5            THE COURT:  And is this for --
6            MS. OHRI:  Non-Monell.
7            THE COURT:  Non-Monell.
8            MS. OHRI:  Yep.
9            THE COURT:  What is the current deadline?
10           MS. OHRI:  The current deadline was May 20th.
11           THE COURT:  And tell me again, you want the May 20th
12  date moved to?
13           MS. OHRI:  To July 18th.
14           THE COURT:  And, then, deposed by?
15           MS. OHRI:  By September 1st.
16           THE COURT:  And defendants' non-Monell expert?
17           MS. OHRI:  By October 5th.  It's two months.
18           THE COURT:  Deposed by?
19           MS. OHRI:  November 9th.
20           THE COURT:  And, then, what are you suggesting on
21  Monell experts?
22           MS. OHRI:  We're not suggesting any changes to the
23  deadlines on Monell experts.  We believe that we can conduct
24  all of these depositions at the same time.
25           THE COURT:  Okay.

```
 1             Are you in agreement with that?
 2             MS. MOORE:  Yes, your Honor.  We seem to be
 3   relatively on track with that.
 4             THE COURT:  Okay.
 5             So, I will grant that motion and make those
 6   extensions.
 7             Do you want to add anything on the status before we
 8   talk about the motion to compel?
 9             MR. MARX:  No.
10             MR. FEDDE:  No, your Honor.
11             THE COURT:  Okay.
12             Let's turn to the motion to compel discovery requests
13   about psychological and medical treatment.
14             The first question:  Your interrogatory asks for
15   medical, which would include physical health.  Are you seeking
16   a response to that for physical health; and, if so, what is
17   the relevance?
18             MS. OHRI:  We would just --
19             THE COURT:  That is not what you argue about in your
20   motion, but --
21             MS. OHRI:  Yeah.  I mean, we would seek any treatment
22   that he's had for his physical health related to his
23   employment as a Chicago police officer.  And in terms of
24   medical treatment, a physician-patient privilege is not
25   recognized.
```

1           THE COURT:  Okay, but that was not the question.
2           The question on the physical health -- and let me
3    take a step back.
4           You are using the wrong standard for your motion to
5    compel.  Rule 26 was amended in December of 2015.  The
6    "reasonably calculated" language is out of the rule.  That
7    does not apply anymore.  There is a new proportionality
8    standard.  So, I would suggest -- not just here, but in every
9    court -- when you are filing motions to compel, that you use
10   the proper standard, because the broad, broad standard no
11   longer applies under the amended rules.
12          What is the relevance of defendant Slechter's
13   physical health to your claims?
14          And, then, I need a little bit more.  You have said,
15   very broad, his physical health related to employment.
16          What are you looking for?
17          MS. OHRI:  Your Honor, without -- I apologize for the
18   standard.
19          But in terms of his physical health, it goes towards
20   what happened the night of the shooting in question.  And we
21   would like to know if he has sought any treatment before the
22   shooting and after the shooting.  It will be relevant to
23   understand what happened.  You know, there was a lot of
24   movement that night.
25          THE COURT:  How is treatment he sought related to

1  physical health?
2       And you said a moment ago physical health related to
3  his employment.
4       MS. OHRI:  Uh-huh.
5       THE COURT:  I am not sure what that means.
6       What do you mean physical health?  Was he ever
7  injured on the job before that he sought treatment for?
8       MS. OHRI:  Yes.
9       THE COURT:  What is it -- you have got to give me
10 more.
11      MS. OHRI:  Yeah.  And, then -- so, we would want to
12 know whether he's been injured on the job before the incident
13 in question and right after.
14      THE COURT:  What is the relevance of any injury on
15 the job he may have had to the events of the night in
16 question?
17      Let's say, for example, a year before hypothetically
18 he was on the job and he broke his leg.  What is the relevance
19 of something like that to the night in question?
20      MS. OHRI:  So, I don't want to -- we would be up for
21 -- we would be okay with limiting the scope with when he
22 injured himself and sought physical treatment.  But his
23 physical condition is extremely relevant to what happened that
24 night and to what his state of mind was.  It's all related.
25      You know, defendant Slechter has been accused of

1   shooting and killing our -- the plaintiff, and that was a
2   night full of a lot of action.
3           THE COURT: Okay. Now, you just moved from physical
4   condition related to employment to his physical condition in
5   general the night of.
6           So, you have to be more focused on this as to any
7   potential relevance. And you still have not answered the
8   question, what would be the relevance if he broke his leg a
9   year ago while he was out on duty to the night in question.
10          Maybe you can help out a bit.
11          MS. HOFT: Your Honor, I think the issue is we're at
12  a bit of a disadvantage because we don't know what the answers
13  to these questions are. So, we are speculating wildly.
14          But your example of breaking a leg before, if the
15  circumstances surrounding that broken leg were when he was
16  chasing a fleeing 19-year-old African American man who they
17  suspected had a gun, that if it was related to something
18  similar to this so that it caused him in this instance -- "I
19  don't want to break my leg again, I'm just going to pull out
20  my gun and shoot this man in his chest."
21          So, those are kind of -- we could do scenarios like
22  that, but we want to know -- and maybe the answer is -- may
23  very likely is -- he hasn't had any injuries on the job.
24          We recently got his deposition just yesterday, I
25  think. So, we're at a bit of a disadvantage there, too. But

1  we believe we're entitled to an answer to the interrogatory so
2  we know what we're fighting about.
3             THE COURT:  Who deposed him?
4             MS. HOFT:  Which lawyer in our office?
5             THE COURT:  Yes.
6        Was it one of you?
7             MS. HOFT:  It was not.
8             THE COURT:  Was he asked about his physical condition
9  on the night in question during the deposition?
10            MS. HOFT:  I believe he was.  Michael Deutsch took
11 his deposition in our office.  And I haven't had a chance to
12 read his entire transcript, which we just got yesterday.
13            THE COURT:  Who is taking this?
14            MR. MARX:  Well, I represent defendant Slechter.  I
15 wasn't present at the dep, and I don't have the transcript.
16 So, unfortunately, I don't have the answer to that.
17            THE COURT:  Okay.
18       You should answer, as to physical condition, the
19 interrogatory of:  "Did the defendant suffer any injuries on
20 the job in the year before the incident in question; and, if
21 so, what are those injuries and did he receive treatment?"
22            MR. MARX:  Okay.
23            THE COURT:  So, that limited question.
24       Now, as to the psychological, your request is very
25 broad.

```
 1              What are you seeking as to psychological?
 2              And I think even you recognize you are not entitled
 3   to get the notes --
 4              MS. OHRI:  Uh-huh.
 5              THE COURT:  -- and statements he has made unless he
 6   knew they were going to be shared with the CPD.
 7              MS. OHRI:  Yeah.
 8              THE COURT:  So, what are you seeking on the
 9   psychological information?
10              MS. OHRI:  Your Honor, once again, we're at a
11   disadvantage because they refuse to answer the question.  So,
12   we have no idea --
13              THE COURT:  But that is circular.  I know you do not
14   know what happened.
15              MS. OHRI:  Yeah.
16              THE COURT:  But what is it that you want them to tell
17   you, and why is that relevant to the case?
18              MS. OHRI:  Well, in terms of the fact discovery, to
19   know what defendant Slechter's state of mind was during the
20   incident; whether or not there were any -- you know, whether
21   or not he sought treatment right before the incident; and,
22   whether or not he sought treatment after the incident, which
23   would go towards our Monell argument in terms of supervision
24   and training and discipline of Chicago police officers.
25              THE COURT:  How would treatment -- let's say after
```

1  the shooting he received mental health treatment because of
2  the trauma of shooting somebody. How is that relevant to your
3  Monell claim?
4          MS. OHRI: It's relevant because should someone have
5  shot and killed somebody, we would expect that CPD would urge
6  that person to seek treatment -- to seek medical treatment --
7  before he goes back on the job, which Slechter is still
8  employed by the Chicago Police Department.
9          So, it goes towards whether or not these officers who
10 are engaged in these very traumatic incidents are properly
11 taking care of themselves in order to, you know, properly
12 pursue their job.
13         MS. MOORE: As for the Monell claim, your Honor, as
14 we stated in the response, you know, the Monell claim deals
15 with these wide-ranging policies, practices and all that. One
16 officer is not going to provide evidence for the Monell claim.
17 If they indeed wanted to pursue that avenue of the Monell
18 claim, the discovery would have to be much more broad; and,
19 the City would object to that. It violates a whole host of
20 privileges and potentially, you know, the Illinois Personnel
21 Records Act.
22         MR. MARX: If I could say something on behalf of
23 Slechter, with regard to the relevance argument, I think I've
24 heard plaintiff say and also state in the motion it goes
25 towards his state of mind. But, again, as I state in my

Case: 1:15-cv-01920 Document #: 178 Filed: 02/26/18 Page 12 of 16 PageID #:1629

12

1  motion, my officer's subjective state of mind is not the
2  relevant standard -- constitutional standard -- to which he's
3  to be judged.
4          The question is:  Was this shooting objectively
5  reasonable?  Not whether Slechter thought it was reasonable or
6  why.  It really is -- as I state in my motion, my officer's
7  mental health is not at issue in this case.  He's not seeking
8  damages.  And I haven't heard any coherent argument that links
9  somehow his mental state to the shooting itself.
10         THE COURT:  The standard is an objective standard
11 based on the totality of the circumstances.  And in that
12 "totality of the circumstances" assessment, the subjective
13 state of mind -- the Seventh Circuit law is clear on that --
14         MS. OHRI:  Uh-huh.
15         THE COURT:  -- the subjective state of mind of the
16 officer involved is not relevant.
17         MS. OHRI:  Uh-huh.
18         I mean, your Honor, again, we don't know what we're
19 working with.  We do know that under -- we've been going
20 through the Monell discovery, and we have just discovered that
21 there is a General Order under the Chicago Police Department
22 that an officer involved in a shooting has to seek counseling.
23 And we just don't -- they haven't responded to the
24 interrogatory at all.
25         And should that have been the situation where he

1  sought counseling and expected the results of that counseling
2  to be reported to his superiors, then we would be entitled to
3  information related to that.  You know, it is absolutely
4  relevant to what happened that night.  And, you know, we think
5  we're entitled to have defendant --
6           THE COURT:  Well, the post-treatment I am not sure is
7  relevant to what happened that night.
8           MS. OHRI:  I mean, who's to say, because we don't
9  have the information?
10          THE COURT:  These are basic upfront questions,
11 whether or not you have the information, that you should be
12 able to answer as to why you want the information in the first
13 place.
14          MS. OHRI:  Uh-huh.
15          THE COURT:  I am sorry, did you want to add
16 something?
17          MS. HOFT:  Your Honor, I think that the issue in
18 terms of subjective state of mind does go to punitive damages.
19 And I also think that in terms of counseling after, it does go
20 to our failure to discipline claim.
21          And I hear what Ms. Moore is saying about now they
22 want us to request more broad discovery if it's going to be
23 relevant; but, certainly, in this instance, in terms of our
24 argument of causation, we need to show that if the City didn't
25 even bother to have their own policies be followed in this

1  instance, that's clearly relevant to our case.
2              THE COURT:  What about the punitive issue and state
3  of mind being relevant to punitives?
4              MR. MARX:  Plaintiff can make that argument through
5  the behavior and conduct of defendant Slechter without knowing
6  this particular piece of information.  There are compelling
7  reasons to keep this information private, for -- to encourage
8  people to seek psychotherapy.  And for the off chance that it
9  might be relevant to punitive damages, I think that is
10 outweighed by the need to keep certain information private and
11 confidential.
12             You know, plaintiff has plenty of opportunities in
13 which Slechter told various people what happened.  And this
14 is, to be honest with you, you know, I think an unjustified
15 fishing expedition to find one more version of the events that
16 she told somebody, and a therapist at that.  And I think that
17 there's not a compelling reason given to invade that privacy.
18             THE COURT:  With respect to Interrogatory No. 1, I
19 want you to answer two limited questions:  Did defendant
20 Slechter voluntarily disclose any information regarding any
21 psychological treatment he may have been receiving to his
22 employer, to CPD, in the one-year period before the incident;
23 and, then, two, did he receive any mental health treatment
24 regarding the incident within a three-month period after the
25 incident?

1           Answer those two questions.
2           MR. MARX:  Yes, Judge.
3           THE COURT:  And everything else, I have not heard any
4    justification for anything broader than that.
5           So, I am granting the motion in limited part.
6           What else in terms of status?
7           MS. MOORE:  I don't believe there's anything else.
8           THE COURT:  Now that fact discovery is over, have you
9    had any settlement discussions?  Is there any interest in
10   going to see --
11          MR. FEDDE:  Your Honor, there is --
12          THE COURT:  -- Magistrate Judge Finnegan?
13          MR. FEDDE:  Your Honor, there is, my understanding,
14   one fact witness that the deposition was started but not
15   finished, and we have leave to finish that deposition.
16          THE COURT:  As I previously gave you.
17          MR. FEDDE:  Yes.
18          THE COURT:  That does not answer the question.
19          Have there been any settlement discussions?
20          MR. MARX:  You asked us to exhaust it last time, and
21   I believe we have.  We've responded to their demand, and I
22   don't see a settlement conference being productive.
23          THE COURT:  Okay.
24          Then move forward with your discovery and come back
25   here -- why don't you come back July 29th, please, at 8:30.

1 And you should be into your expert discovery at that point.

2     And make sure you look at the new Rule 26.

3     Thank you.

4     MS. MOORE:  Thank you.

5     MS. HOFT:  Thank you, your Honor.

6     MR. FEDDE:  Thank you, your Honor.

7     *  *  *  *  *

8 I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

9

10

/s/ Joseph Rickhoff                   February 1, 2018
11 Official Court Reporter