```
 1                   IN THE UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF ILLINOIS
 2                              EASTERN DIVISION


 3
     ESTATE OF ROSHAD MCINTOSH DECEASED,   ) Docket No. 15 C 1920
 4   BY CYNTHIA LANE, Administrator of     )
     the Estate of Roshad McIntosh,        )
 5                                         )
                               Plaintiff,  )
 6                                         )
                  vs.                      )
 7                                         )
     CITY OF CHICAGO, et al.,              ) Chicago, Illinois
 8                                         ) June 21, 2017
                              Defendants.) 9:11 o'clock a.m.
 9

10               TRANSCRIPT OF PROCEEDINGS - MOTION
                BEFORE THE HONORABLE AMY J. ST. EVE
11

12   APPEARANCES:

13
     For the Plaintiff:         ACTION INJURY LAW GROUP, LLC
14                              BY:  MR. ANDREW M. STROTH
                                191 North Wacker Drive, Suite 2300
15                              Chicago, Illinois  60606

16                              ODIM LAW OFFICES
                                BY:  MR. CARLTON E. ODIM
17                              225 W. Washington St., Suite 2200
                                Chicago, Illinois  60606
18

19   For the Defendant          ROCK, FUSCO & CONNELLY, LLC
     City of Chicago:           BY:  MS. STACY A. BENJAMIN
20                                   MR. PATRICK R. MORAN
                                321 North Clark Street, Suite 2200
21                              Chicago, Illinois  60654

22
     For Certain Defendant      CITY OF CHICAGO, DEPARTMENT OF LAW
23   Officers:                  BY:  MR. JASON M. MARX
                                30 North LaSalle Street, Suite 900
24                              Chicago, Illinois  60602

25
```

```
 1   APPEARANCES (Cont'd):

 2
     For Deft. Sampim:          BORKAN & SCAHILL, LTD.
 3                              BY:  MS. WHITNEY N. HUTCHINSON
                                20 South Clark Street, Suite 1700
 4                              Chicago, Illinois  60606

 5
     Court Reporter:            MR. JOSEPH RICKHOFF
 6                              Official Court Reporter
                                219 S. Dearborn St., Suite 2128
 7                              Chicago, Illinois  60604
                                (312) 435-5562
 8

 9              *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

10                     PROCEEDINGS RECORDED BY
                         MECHANICAL STENOGRAPHY
11                   TRANSCRIPT PRODUCED BY COMPUTER

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1           (Proceedings had in open court:)
 2               THE CLERK:  15 C 1920, Lane vs. City of Chicago.
 3               MS. HUTCHINSON:  Good morning, your Honor, Whitney
 4   Hutchinson, H-u-t-c-h-i-n-s-o-n, on behalf of Officer Sampim.
 5               MS. BENJAMIN:  Good morning, your Honor, Stacy
 6   Benjamin and Patrick Moran on behalf of defendant City of
 7   Chicago.
 8               MR. ODIM:  Good morning, your Honor, Carlton Odim on
 9   behalf of the plaintiff.
10               MR. STROTH:  Good morning, your Honor, Andrew Stroth
11   on behalf of the plaintiff.
12               MR. MARX:  Good morning, Judge, Jason Marx on behalf
13   of the defendant officers except for Officer Sampim.
14               THE COURT:  So, you are here on defendants' motion to
15   compel.  I received plaintiff's response, which was much
16   more of a you did not meet and confer than a substantive
17   response.
18               Have you had any discussions or met and conferred
19   since the filing of the motion?
20               MR. ODIM:  No, your Honor.
21               THE COURT:  All right.
22               MR. MORAN:  Judge?
23               THE COURT:  Yes.
24               MR. MORAN:  With respect to the meet-and-confer, I
25   think the response doesn't paint a complete picture, because
```

1 there were attempts to have discussions in substance about
2 this going back to when counsel first got on the case.  And we
3 were on the phone for a long period of time and, ultimately,
4 came to the fact that he had to confer with the prior
5 attorneys.
6      If you look at the timeline in this case, you know,
7 after that, we set a deadline at the end of January to resolve
8 these issues.  So, there was a full understanding and
9 expectation as of then that we would get this done in January.
10      Since that time, there have been attempts to have the
11 conversation again, and those attempts were overshadowed by
12 one thing or another.  And I think in the e-mails that we
13 attached, it demonstrates that there's an expectation
14 admittedly by plaintiff to respond to that outstanding
15 discovery, either telling us that we're wrong or to supplement
16 the discovery as we've requested.  And that didn't happen.
17      So, you know, when it comes to a meet-and-confer, we
18 did make a good-faith attempt at it.  Although it didn't
19 actually happen the way one would like typically, it was
20 there.  At some point, though, we have to move beyond that and
21 can't just hold everything up for a meet-and-confer in
22 substance that never actually happens.
23      THE COURT:  All right.  I know you are never going to
24 agree on this, so let's get to the substance.
25      The document production request.

1    In your response, Mr. Odim, you indicated that you
2 had made a mistake and you had not attached something, but you
3 subsequently attached it.
4    MR. ODIM:  That's --
5    THE COURT:  But you did not give me the attachment,
6 so I do not know what it is that you attached or --
7    MR. ODIM:  It was --
8    THE COURT:  -- if it responds in full to the request.
9    MR. ODIM:  The --
10    THE COURT:  And it looks like you only produced six
11 documents in response to the --
12    MR. ODIM:  Right.  The --
13    THE COURT:  -- document requests.
14    MR. ODIM:  Exhibit 3 to the response contains the
15 attachment.  That should have gone out with the documents.
16 So, it's the formal response to the requests to produce, which
17 was inadvertently not attached, again, to the e-mail
18 transmitting the documents that are part of this.  That is --
19 again, that's attached to Exhibit 3 of our response.
20    THE COURT:  What is your response to that?  Does that
21 satisfy the document request?
22    MS. BENJAMIN:  It is a document request; however,
23 it's tied to the contention interrogatories.  So, the problem
24 with the contention interrogatories isn't dealt with by this.
25 And, you know, we have not -- there's numerous documents that

1  are pointed to online.  The vastness and scope of those
2  documents -- particularly, a database, I think it was -- I
3  thought I highlighted it.
4         There were a couple of documents that are extremely
5  large Internet sites.  So, we're going to need more
6  specificity, and that's exactly what the contention
7  interrogatories were seeking and what in some of these 50-page
8  documents are you pointing to?
9         THE COURT:  What are you pointing to in particular?
10 You say an Internet site.
11        MR. MORAN:  Well --
12        MS. BENJAMIN:  There's publicly released police
13 Complaint Register information on the Internet at Citizens
14 Police Data Project.
15        THE COURT:  What page are you on of Exhibit 3?
16        MS. BENJAMIN:  It is --
17        MR. MORAN:  Page 2.
18        MS. BENJAMIN:  It's Page 2 of the document, 17 of the
19 filing -- or 12 of the filing.
20        THE COURT:  Okay.
21        MR. MORAN:  Judge, there's another one.  This isn't
22 an Internet, but it's the court file in Obrycka vs. Chicago.
23 Obviously, the entirety of the court file is not --
24        THE COURT:  I am quite familiar with that file.
25        MR. MORAN:  No, I know you are.

1           THE COURT: That is kind of broad.
2       (Laughter.)
3           MS. BENJAMIN: So, you can speak to how large it is.
4           THE COURT: I am fairly certain that that entire file
5   does not pertain to the Monell discovery that is sought here.
6           MS. BENJAMIN: Another one is data publicly released
7   by IPRA. IPRA's Web site is continually changing. So, if
8   they have identified and pulled something off of that, it may
9   not be there today when I go to look for it. So, it would be
10  difficult for defendants to identify precisely what they're
11  referring to when they make such a generalized kind of
12  reference.
13          THE COURT: Let's start with do you have other
14  documents that are responsive to these production requests
15  that you either have not produced or are not listed here?
16          MR. ODIM: Not that I am presently aware of. And I
17  hope that isn't -- that's not couching it too -- as a hedge.
18  Again, this is a massive file when we took it over. And --
19          THE COURT: I know, but you did take it over a while
20  ago.
21          MR. ODIM: Yes. Yeah, we did. Yeah. We did take it
22  over a while ago.
23          And, so, we have disclosed, best of my knowledge, all
24  the documents that we have -- we have used -- and the
25  documents that the prior counsel used.

```
 1                THE COURT:  Okay.
 2                MS. BENJAMIN:  The problem with that, for instance,
 3    with the data publicly released by IPRA, is we are producing a
 4    witness -- a 30(b)(6) witness -- who is going to be testifying
 5    on behalf of the City, particularly with regard to IPRA's
 6    policies and practices of investigating police-involved
 7    shootings.  So, without knowing precisely the data they want
 8    to ask him about, it's impossible for me to prepare these
 9    witnesses to answer all the questions that plaintiff may have.
10                So, you know, I don't want -- I'm not, you know,
11    trying to delay these 30(b)(6) depositions, but I'm kind of in
12    the dark as to what I fully need --
13                THE COURT:  When is that scheduled for?  When is that
14    30(b)(6) witness?
15                MS. BENJAMIN:  He is later in, I think, July.  Let me
16    look.
17                THE COURT:  So, you have some time for him?
18                MS. BENJAMIN:  We do have some.  He's scheduled for
19    July 11th.
20                THE COURT:  Okay.
21                So, for that witness in particular, because this is
22    extremely broad, you should identify with specificity what
23    data you are referring to that you are going to ask about --
24                MR. ODIM:  Okay.
25                THE COURT:  -- out of fairness.  And do that by June
```

1  30th.  Provide Ms. Benjamin with that information.
2           As to some of your other responses that are very
3  broad, like the Obrycka court file, you need to supplement and
4  be more specific.
5           MR. ODIM:  Okay.
6           THE COURT:  To the extent that you have -- here is a
7  perfect example of what you should do.  On Page 1, you
8  identify Dr. Fogel's deposition testimony in Fallon v. Dillon.
9  You do not say the entire Fallon v. Dillon court file.
10          MR. ODIM:  Okay.
11          THE COURT:  You should do the same for not just
12 Obrycka, but the other categories that you have identified
13 that are extremely broad, including if you are identifying an
14 entire Web site.  And you should supplement that by June 30th,
15 as well.
16          So, I will grant the motion as to that aspect.
17          Next, you've identified contention interrogatories
18 that have not been responded to in full.  And I think all of
19 the interrogatories you've identified are contention
20 interrogatories.
21          Is that correct?
22          MR. MORAN:  Yes.
23          THE COURT:  So, rather than going through those one
24 by one, I know you have said in response, essentially, that
25 you should not have to answer contention interrogatories and

1 get boxed in this soon.

2 Is that a fair summary of your response?

3 MR. ODIM: Yes.

4 MS. BENJAMIN: Actually, your Honor, I think the

5 footnote refers to the end of expert discovery, which is not

6 even supported by the case law, that says near the end of fact

7 discovery, which is where we're at.

8 MR. ODIM: Well, oftentimes, contention

9 interrogatories are ordered to be answered as part of the

10 pretrial conference process. So, there's no fixed line.

11 THE COURT: There's no fixed line, which is accurate.

12 And you are always under a duty to supplement. But we are

13 near the end of fact discovery. So, even if some of your

14 answers are more broad -- I understand, and you supplement

15 later -- you do still have to answer these.

16 At this stage, you have been in here long enough, you

17 should at least know what your theories are and what you are

18 relying on to some extent. But, again, I realize that you may

19 have to supplement them later on in the case.

20 But given that fact discovery is almost over and you

21 have been in this case now for months, you should be able to

22 give answers in whatever format, but with substance, to the

23 defendants, so that they can prepare going forward in the

24 case.

25 I am going to direct you to answer those outstanding

1  contention interrogatories -- again, with the understanding
2  that you may need to supplement them -- by July 10th.
3           MR. MORAN:  Judge, can I just -- one point of
4  clarification.  It wasn't necessarily a failure to answer.
5           THE COURT:  Some of them it was.
6           MR. MORAN:  Yeah, some of them it was.  And some of
7  them it's --
8           THE COURT:  And some of them are way too broad.
9           MR. MORAN:  Exactly, yeah.
10          THE COURT:  So, you must answer those, as I said,
11 with some specificity by July 10th.
12          While you are here, what else?
13          MR. ODIM:  I think with the Monell schedule, are we
14 still waiting on the proposed schedule?
15          MS. BENJAMIN:  No, I thought we submitted that.
16          MR. ODIM:  Okay.
17          MS. BENJAMIN:  Yeah.
18          MR. MORAN:  We submitted a proposed schedule, and I
19 think it's --
20          MS. BENJAMIN:  I thought it was entered.
21          MR. MORAN:  Yeah, I thought it was adopted already.
22          THE COURT:  I thought it was, too.  I can go back and
23 double-check.  But you submitted that, I think, on June 1st.
24 I thought the Court --
25          MS. BENJAMIN:  Right.

1  THE COURT: -- had adopted it, but I will go back and
2 check.
3  MS. BENJAMIN: We do have a status set for June 26th.
4 I think maybe if we came back after that July 10th date, that
5 might be a better --
6  THE COURT: Right. That is exactly where I am going.
7  You were supposed to report to the Court on the 26th
8 if there was any interest in settlement, in going to see
9 Magistrate Judge Finnegan for a settlement conference.
10  Have you had those discussions yet and is there any
11 interest?
12  MS. BENJAMIN: We have not heard back from our client
13 at this point. So, we would probably be able to report on
14 that on July 10th.
15  THE COURT: Okay. Please ask your client, again.
16  MS. BENJAMIN: Yes.
17  THE COURT: And be prepared to address that when you
18 are back here after the 10th.
19  So, the motion to compel is granted, in part, as
20 stated. I am going to strike the June 26th status hearing and
21 set it for shortly after the 10th.
22  Katie, whatever day works.
23  THE CLERK: July 12th at 8:30.
24  MR. MORAN: Judge, with respect to settlement, we did
25 get a demand from the plaintiff. It was a one line -- or, you

1  know, two-sentence demand.  I did request more information.
2  You know, similar to the kind of letter that we would exchange
3  with the magistrate judge.  I think -- I'm not -- I'm just
4  throwing it out there.  I think it would be helpful, from our
5  perspective, to get something that has more support.
6            THE COURT:  Then you should have those discussions.
7  That was what I had directed you to do when you were here
8  previously, to have discussions among yourselves.  And if that
9  means you need additional information, then --
10           MR. STROTH:  We're more than interested in
11 entertaining settlement discussions.  We just are so far apart
12 from counsel's perspective that I don't know if that's
13 fruitful.  But we can do that.
14           MR. MORAN:  Well, so, I did ask for more information
15 before.  We haven't gotten it.  So, I mean, to the extent
16 there's a way to bridge the gap, there's going to have to be
17 justification for the numbers, you know.
18           THE COURT:  So, provide some additional --
19           MR. STROTH:  We will.
20           THE COURT:  -- information to them --
21           MR. STROTH:  No problem.
22           THE COURT:  -- well in advance of the 10th.
23           MR. STROTH:  Sure.
24           THE COURT:  In fact, given your history here, provide
25 that information that they've requested by June 26th --

1           MR. STROTH: No problem.

2           THE COURT: -- so they have it with sufficient time.

3           I expect you to have an answer. After that, talk to

4 your client, have discussions among yourselves, and I expect

5 you -- I do not expect you to tell me when you are back here

6 in July that you have not heard from your client yet.

7           MR. ODIM: Could we have a response to our -- we'll

8 send the letter. Could we have a response to our letter that

9 gives us a figure and gives justification for that figure?

10          THE COURT: I'm directing you to talk about that --

11          MR. ODIM: Okay.

12          THE COURT: -- afterwards. And I expect that you

13 will get something back.

14          MR. ODIM: Okay.

15          THE COURT: And we will talk about that on the 12th.

16          MR. ODIM: Thank you, your Honor.

17          MS. BENJAMIN: Thank you.

18          MR. MORAN: Thanks, Judge.

19          THE COURT: Anything else?

20          MR. MORAN: That's it.

21          THE COURT: All right. Thank you.

22                \*   \*   \*   \*   \*

I certify that the foregoing is a correct transcript from the

23 record of proceedings in the above-entitled matter.

24
/s/ Joseph Rickhoff                       November 16, 2021

25 Official Court Reporter